## DECLARATION OF SELECT PORTFOLIO SERVICING, INC.

STATE OF UTAH        §
                               §
COUNTY OF SALT LAKE  §

I, ____Sherry Benight____, declare the following:

1. I am a Document Control Officer with Select Portfolio Servicing, Inc. ("SPS"), the mortgage servicer and attorney-in-fact for Deutsche Bank National Trust Company, as Trustee in Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-7, Asset-Backed Certificates, Series 2006-7 ("Trustee") which is the mortgagee for the loan made the basis of the present action. As such, I am authorized to provide this Declaration on behalf of SPS and Trustee.

2. SPS maintains a computer database (the "Loan Records") of acts, transactions, payments, communications, escrow account activity, disbursements, events, documents, instruments, and analyses (the "Loan Transactions") with respect to the mortgage loans that SPS services. Entries in the Loan Records are made at the time of the events and conditions they describe either by people with first-hand knowledge of those events and conditions or from information provided by people with such first-hand knowledge. The Loan Records are maintained in SPS' regular course of business. I have access to the Loan Records with respect to the loan at issue, and I have knowledge of how they are maintained. Based upon those records, I have gained knowledge of the facts set forth herein and, if called upon as a witness to testify, could and would competently testify to those facts under penalty of perjury. The information described herein and referenced below is found in the business records of SPS.

3. The Loan Records reflect that David L. Glassel ("Borrower") executed a Texas Home Equity Security Note ("Note") payable to Long Beach Mortgage Company ("Long Beach") on or about June 9, 2006 in the principal amount of $204,000.00. A true and correct copy of the original Note as contained within the Loan Records is attached hereto as <u>Exhibit 1-A</u>.

4. The Loan Records reflect that Borrower executed a Texas Home Equity Security Instrument (the "Deed of Trust"). A true and correct copy of the Deed of Trust filed as Instrument No. 2006-073760 in the real property records of Montgomery County, Texas as contained within the Loan Records is attached hereto as <u>Exhibit 1-B</u>. The Note, any modification or forbearance agreements, if any, and Deed of Trust will be collectively referred to herein as the "Loan."

20060161.20170545/2846036.1



5. The Loan Records reflect that Borrower executed a Texas Home Equity Affidavit and Agreement (the "Home Equity Affidavit"). A true and correct copy of the Home Equity Affidavit as contained within the Loan Records is attached hereto as <u>Exhibit 1-C</u>.

6. The Loan Records reflect that Borrower executed a Settlement Statement. A true and correct copy of the Settlement Statement as contained within the Loan Records is attached hereto as <u>Exhibit 1-D</u>.

7. The Loan Records reflect that Borrower executed an Affidavit of Receipt of Final HUD. A true and correct copy of the Affidavit of Receipt of Final HUD as contained within the Loan Records is attached hereto as <u>Exhibit 1-E</u>.

8. The Loan Records reflect that Borrower executed an Affidavit of Facts and Receipt of Documents. A true and correct copy of the Affidavit of Facts and Receipt of Documents as contained within the Loan Records is attached hereto as <u>Exhibit 1-F</u>.

9. The Loan Records reflect that Borrower executed a Texas Home Equity Acknowledgement of Loan Closing Documents Received by Borrowers. A true and correct copy of the Texas Home Equity Acknowledgement of Loan Closing Documents Received by Borrowers as contained within the Loan Records is attached hereto as <u>Exhibit 1-G</u>.

10. The Loan Records reflect that Borrower executed a Discount Point Acknowledgment. A true and correct copy of the Discount Point Acknowledgment as contained within the Loan Records is attached hereto as <u>Exhibit 1-H</u>.

11. The Loan Records reflect that Borrower executed a Texas Home Equity Occupancy Affidavit. A true and correct copy of the Texas Home Equity Occupancy Affidavit as contained within the Loan Records is attached hereto as <u>Exhibit 1-I</u>.

12. The Loan Records include a Corporate Assignment of the Deed of Trust from the Federal Deposit Insurance Corporation ("FDIC"), as Receiver of Washington Mutual Bank Successor in Interest of Long Beach to Trustee. A true and correct copy of that Assignment as contained within the Loan Records and as recorded in the real property records of Montgomery County, Texas as 2013007699 is attached hereto as <u>Exhibit 1-J</u>.

13. The Loan Records reflect that Borrower fell behind on his payment obligations under the Loan and is past due for the October 1, 2012 payment and all subsequent payments.

14. The Loan Records reflect that Trustee has executed a Limited Power of Attorney in which it appointed SPS as its attorney-in-fact in connection with the Loan and the matters set forth therein. A true and correct copy of

2

the Limited Power of Attorney as contained within the Loan Records is attached hereto as Exhibit 1-K.

15. The Loan Records reflect that Notice of Default was sent to Borrower by certified mail on or about May 19, 2015 to the address indicated therein. A true and correct copy of that Notice of Default as contained within the Loan Records is attached hereto as Exhibit 1-L.

16. The Loan Records reflect that a Notice of Acceleration and Loan Maturity was sent to Borrower on November 30, 2015 by counsel for Trustee and SPS. A true and correct copy of that Notice of Acceleration and Foreclosure as contained within the Loan Records is attached hereto as Exhibit 1-M.

17. The Loan Records include a Reinstatement Quote indicating the amount required to reinstate the Loan through March 1, 2018 is or will be $156,074.47. A true and correct copy of the Reinstatement Quote as contained within the Loan Records is attached hereto as Exhibit 1-N.

18. The Loan Records reflect that the accelerated loan balance due under the Loan as of March 1, 2018 is or will be $325,464.89. Per diem interest will continue to accrue after March 1, 2018 in the amount of $40.92 per day until payment. A true and correct copy of a Payoff Quote as contained within the Loan Records is attached hereto as Exhibit 1-O.

19. Borrower is in default on his contractual obligations under the Loan and despite written demand has failed to cure such defaults or to pay the accelerated loan balance.

20. The Loan Records reflect that Trustee has not sold or assigned any interest in the Loan to any other party.

IN WITNESS WHEREOF, I declare under penalty of perjury pursuant to the laws of the State of Utah that the foregoing is true and correct.

DATED: 3-23-18

SELECT PORTFOLIO SERVICING, INC.

By: _Sherry Benight_
Name: Sherry Benight
Title: Document Control Officer

GINA TOLMAN
Notary Public State of Utah
My Commission Expires on:
December 11, 2018
Comm. Number: 680681

SWORN AND SUBSCRIBED TO BEFORE ME on this 23rd day of March, 2018, by Sherry Benight, Document Control Officer, who is personally known to me.

Gina Tolman
Notary Public for the State of Utah

3



PNOTE

Loan No:
Borrower: DAVID L. GLASSEL

## THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION

## TEXAS HOME EQUITY NOTE
### (Cash Out - Fixed Rate - First Lien)

June  9, 2006                    HOUSTON                    Texas
                                   [City]                    [State]

2119 OLD OX ROAD, SPRING, TX 77386
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for a loan that I have received, I promise to pay U.S. $   204,000.00 ***   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   LONG BEACH MORTGAGE COMPANY

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the security instrument executed concurrently herewith (the "Security Instrument").

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of   8.600   %.  The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.  It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law.  Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or prepayment of the loan, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

**3.  PAYMENTS**

(A)   Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on   August  1, 2006   .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal.  If, on   July  1, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at   P.O. Box 3139, Milwaukee, WI 53201-3139
or at a different place if required by Note Holder.

(B)   Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   1,583.07 ***   .

**4.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment."  When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment penalty or other charge.  The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note.  If I make a partial prepayment, there will be no



tabbies  EXHIBIT
**1-A**

changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. Should the Note Holder agree in writing to such changes, my payments thereafter will be payable in substantially equal successive monthly installments.

**5. LOAN CHARGES AND FEES**

All agreements between Note Holder and me are expressly limited so that any interest, loan charges or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this loan and which sets maximum interest, loan charges or fees, is finally interpreted so that the interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limits, or a determination is made at any time by the Note Holder that interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment. **My acceptance of any such refund will constitute a waiver of any right of action I might have arising out of such overcharge.**

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

The provisions of this Section 5 shall supersede any inconsistent provision of this Note or the Security Instrument.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN          ( 15  ) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6 .000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice by certified mail telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is deposited in the United States mail, postage prepaid and addressed to me at my last known address as shown by the records of the Note Holder. This Note may not be accelerated because of a decrease in the market value of the property described above or because of the property owner's default under any indebtedness not evidenced by this Note or the Security Instrument.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated to be incurred in connection with maintaining or servicing this Extension of Credit.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given in writing by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure by the Note Holder to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of the Borrower's promises and obligations in this Note are performed, including the payment of the full amount owed.  Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of such owner unless the owner or spouse obtained this Extension of Credit by actual fraud.  This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note.  This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from the Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 8 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. The Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

· Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. APPLICABLE LAW**

This Note shall be governed by the laws of the State of Texas and any applicable federal law.  In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict.  In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law.  All other provisions in this Note will remain fully effective and enforceable.

**12. NO ORAL AGREEMENTS**

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES.  THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) OF THE UNDERSIGNED.

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT.   THIS
DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A
TITLE COMPANY.  YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.

_____ (Seal)      _____ (Seal)
DAVID L. GLASSEL    Borrower                             Borrower

_____ (Seal)      _____ (Seal)
                         Borrower                             Borrower

_____ (Seal)      _____ (Seal)
                         Borrower                             Borrower

_____ (Seal)      _____ (Seal)
                         Borrower                             Borrower

*[Sign Original Only]*

2006-073760          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          8

109

*Return To*
*Texas Nations Title*
*3 Riverway, Suite 725*
*Houston, TX 77056*

After recording please return to:
WASHINGTON MUTUAL
Document Operations
2210 Enterprise Dr. Mail Stop: SCO0140
Florence, SC 29501

[Space Above This Line For Recording Data]

Loan No:    6736716
Borrower:   DAVID L. GLASSEL

THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY
SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

# TEXAS HOME EQUITY SECURITY INSTRUMENT
### (Cash Out - First Lien)

This Security Instrument is not intended to finance Borrower's acquisition of the Property.

THIS SECURITY INSTRUMENT is made on   June 9, 2006          . The grantor is DAVID L.
GLASSEL, AN UNMARRIED MAN

("Borrower").

The trustee is ALLAN B. POLUNSKY
whose address is   8000 I. H. 10 West, Suite 1600, San Antonio, TX 78230-3892

("Trustee").

The beneficiary is   LONG BEACH MORTGAGE COMPANY

which is organized and existing under the laws of the State of   the State of Delaware
and whose address is   1400 South Douglass Road, Suite 100, Anaheim, CA 92806

("Lender").

Borrower owes Lender the principal sum of  Two Hundred Four Thousand And No/100ths
Dollars (U.S. $204,000.00          ). This debt is an extension of credit as
defined by Section 50(a)(6), Article XVI of the Texas Constitution (referred to herein as the "Extension of Credit") and is evidenced
by Borrower's note dated the same date as this Security Instrument (the "Note"), which provides for monthly payments, with the full
debt, if not paid earlier, due and payable on   July 1, 2036          . This Security Instrument secures to Lender: (a)
the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower
irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in MONTGOMERY ,
County, Texas:

LOT SIXTY-FIVE (65), BLOCK THREE (3), SECTION ONE (1), SPRING FOREST
SUBDIVISION, LOCATED IN THE MONTGOMERY COUNTY SCHOOL LAND SURVEY, ABSTRACT
NO. 351, ACCORDING TO THE MAP OR RECORD IN VOLUME 7, PAGE 379, MAP RECORDS
OF MONTGOMERY COUNTY, TEXAS.

which has the address of   2119 OLD OX ROAD, SPRING
                                            [Street]                                                            [City]
Texas      77386
              [Zip Code]                                              ("Property Address");

TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out - First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
FHA18-1.1705                                         Page 1 of 8                                         Form 3044.1 01/98

EXHIBIT
1-B

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

Loan No:

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest; Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) hazard insurance premiums for the Property and; (d) flood insurance premiums for the Property, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds , showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are not pledged as additional security for any sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under Paragraphs 1 and 2 shall be applied: first, to amounts payable under Paragraph 2; second, to interest due; third, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in Paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Paragraph 4. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days giving of notice.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with Paragraph 7.

PBA18-2.1205          Page 2 of 8          Form 3044.1 01/98

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

Loan No: ▉▉▉▉

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible. If the restoration or repair is not economically feasible, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess paid to Borrower. If Borrower abandons the Property or does not answer within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of the payments. If under Paragraphs 20 or 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in Paragraph 17, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default and may be held personally liable for debt evidenced by the Note or this Security Instrument if Borrower gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender, so far as allowed by applicable law, may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other applicable law.

Any amounts disbursed by Lender under this Paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for the conveyance in lieu of condemnation, shall be paid to Lender to be applied to the sums secured by this Security Instrument.

In the event of a total or partial taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of such payments.

*PBA18-3.1205*                                     Page 5 of 8                                     Form 3044.1 01/98



Title Data, Inc. SV TDI33811 MG 2006073760.003

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

Loan No: ████

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the original Borrower or Borrower's successors in interest from Borrower's obligations under the Note and this Security Instrument. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraphs 16 and 23. Borrower's covenants and agreements shall be joint and several subject to the provisions of Paragraph 23. Any Borrower who co-signs this Security Instrument, but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution providing for execution hereof, in order to establish a valid lien, by the spouse of each owner of the Property; (b) is not personally obligated to pay the sums secured by this Security Instrument and; (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Lender's Right-to-Comply .** It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender a reasonable time to comply, as provided in this paragraph 12, with lender's obligations under the Extension of Credit. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have a reasonable time to comply, as provided in this Paragraph 12, with any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Paragraph 13, and will give Lender a reasonable time to comply. Borrower will cooperate in reasonable efforts to effectuate any compliance. Only after Lender has received said notice, has had a reasonable time to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by the Lender to comply with its obligations under this Extension of Credit.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Paragraph 12, and such document shall be automatically reformed, without the necessity of the execution of any amendment or new document, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution , and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, loan charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this loan and which sets maximum interest, loan charges or fees is finally interpreted so that the interest, loan charges or fees that the Lender has collected or is entitled to collect in connection with this loan exceed the permitted limits, or a determination is made at any time by Lender that interest, loan charges or fees that the Lender has collected or is entitled to collect in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit; and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. The Lender may choose to make this refund by reducing the principal Borrower owes under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment. Borrower's acceptance of any such refund will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

It is the express intention of the Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

*PBA18-4.1205*                                      Page 4 of 8                                      Form 3044 1/21/98



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

Loan No: ████████

Lender's right-to-comply as provided in this Paragraph 12 shall survive the payoff of the Extension of Credit. The provision of this Paragraph 12 shall supersede any inconsistent provision of the Note or this Security Instrument.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given in writing by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given in writing by first class mail (but, by certified mail if the notice is given pursuant to Paragraph 12 hereof) to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 13.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of Texas. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by the Borrower related to the Extension of Credit.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

17. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) five days (or such other period as applicable law might specify for reinstatement) before sale of the Property pursuant to the power of sale contained in this Security Instrument after entry of a court order permitting exercise of such power of sale; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Paragraph 16.

18. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with Paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

19. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 19, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 19, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

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

Loan No: ▓▓▓▓▓

20. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 16 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any remedies permitted by applicable law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.

21. **Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, the Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Paragraph 21 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by applicable law. Lender shall provide a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

22. **Release.** Within a reasonable time after termination and full payment of the Extension of Credit, the Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recording costs. OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50, ARTICLE XVI OF THE TEXAS CONSTITUTION.

23. **Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

*PBA18-6.1205*                                            Page 6 of 8                                      Form 3044.1 01/98



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

Loan No: ████████

If this Extension of Credit is obtained by such actual fraud, then, subject to Paragraph 11, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Paragraph 23 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

24. **Proceeds.** The Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or debt to another lender.

25. **No Assignment of Wages.** The Borrower has not assigned wages as security for the Extension of Credit.

26. **Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

27. **Rider(s) to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the riders were a part of this Security Instrument. [Check as applicable].

☐ Texas Home Equity Adjustable Rate Rider      ☐ Texas Home Equity Condominium Rider
☐ Texas Home Equity Planned Unit Development Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

| YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS LOAN WITHOUT PENALTY OR CHARGE. |

_____ (Seal)     _____ (Seal)
DAVID L. GLASSEL           -Borrower                                              -Borrower

_____ (Seal)     _____ (Seal)
                                     -Borrower                                              -Borrower

_____ (Seal)     _____ (Seal)
                                     -Borrower                                              -Borrower

_____ (Seal)     _____ (Seal)
                                     -Borrower                                              -Borrower

PBA18-7.1205                                  Page 7 of 8                                  Form 3044.1 01/98

Title Data, Inc. SV TDI33811 MG 2006073760.007

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

_____ [Space Below This Line For Acknowledgment] _____

State of TEXAS      §
County of Herris    §
                    §

    This instrument was acknowledged before me on the
by DAVID L. GLASSEL

9th day of Jun 2006

Sandra Flores
(Printed Name)

Notary Public

[Personalized Seal]                8.22.07
My commission expires:_____



SANDRA FLORES
NOTARY PUBLIC, STATE OF TEXAS
COMMISSION EXPIRES
AUGUST 22, 2007

FILED FOR RECORD
06 JUN 30 AM 10: 58

Mark Turnball
COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF MONTGOMERY
    I hereby certify this instrument was filed in
File Number Sequence on the date and at the time
stamped herein by me and was duly RECORDED in
the Official Public Records of Real Property at
Montgomery County, Texas.

JUN 3 0 2006



Mark Turnball
County Clerk
Montgomery County, Texas

PBA18-8.1205
Form 3044.1 01/98

Page 8 of 8

Title Data, Inc. SV TDI33811 MG 2006073760.008

E-FILED FOR RECORD
01/25/2013 10:29AM

**Doc# 2013007699**
**Pages 2**

*Mark Turnbull*
COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF MONTGOMERY
I hereby certify this instrument was e-FILED in
file number sequence on the date and at the time
stamped herein by me and was duly e-RECORDED in
the Official Public Records of Montgomery County, Texas.

01/25/2013

*Mark Turnbull*
County Clerk
Montgomery County, Texas

Title Data, Inc. SV TDI33811 MG 2013007699.002

**2006-073761**          **I I5 - I I - I236**



Return To:
WASHINGTON MUTUAL
Document Operations
2210 Enterprise Dr. Mail Stop: SC00140
Florence, SC 29501
Loan #:

Return To
*Texas Nations Title*
*3 Riverway, Suite 725*
*Houston, TX 77056*

Prepared By:
Polunsky and Beitel, LLP
8000 IH 10 West, Suite 1600
San Antonio, TX  78230

───────────[To Be Recorded With Security Instrument. Space Above This Line for Recording Data]───────────

# TEXAS HOME EQUITY
# AFFIDAVIT AND AGREEMENT
## (First Lien)

(Do not sign this Texas Home Equity Affidavit and Agreement until you have executed an
Acknowledgment Regarding Fair Market Value, and received and reviewed the Texas Home
Equity Note and the Texas Home Equity Security Instrument.)

State of TEXAS

Before me, the undersigned authority, a Notary Public in and for the State of Texas, on this day personally
appeared     DAVID L. GLASSEL, AN UNMARRIED MAN

and on oath such individual, or each of them, swears that the following statements are true:

I.   **REPRESENTATIONS AND WARRANTIES:**
A. I am a borrower named in the Texas Home Equity Note (the "Note") or the owner or spouse of an
owner of the property described in the Texas Home Equity Security Instrument (the "Security Instrument") which

TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT (First Lien)-Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT
-8034(TX) (0310)           Form 3185 1/01
Page 1 of 6           Initials: 
          VMP Mortgage Solutions (800)521-7291



Title Data, Inc. BV TDI33811 MG 2006073761.001

1|5-11-1237

term includes any riders to the Texas Home Equity Security Instrument), both bearing date of June 9, 2006 , evidencing and securing an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit") and providing for a lien on the following described property (the "Property") located in MONTGOMERY County, Texas:
LOT SIXTY-FIVE (65), BLOCK THREE (3), SECTION ONE (1), SPRING FOREST SUBDIVISION, LOCATED IN THE MONTGOMERY COUNTY SCHOOL LAND SURVEY, ABSTRACT NO. 351, ACCORDING TO THE MAP OR RECORD IN VOLUME 7, PAGE 379, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

which has the address of: 2319 OLD OX ROAD                                              [Street]
SPRING                                [City], Texas  77386              [Zip Code] ("Property Address").

The Property includes all incidental rights in and to the Property including all improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions are included as well as any interest in a planned unit development, condominium project, homeowners' association or equivalent entity owning or managing common areas or facilities associated with the Property. All of the foregoing is referred to herein as the Property, provided however that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.
The Property does not include any additional real or personal property not included within the definition of homestead in accordance with applicable law including but not limited to Sections 41.002(a), (b), and (c) of the Texas Property Code which provide:

**Section 41.002 Definition of Homestead**
(a) If used for the purposes of an urban home or as both an urban home and a place to exercise a calling or business, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than 10 acres of land which may be in one or more contiguous lots, together with any improvements thereon.
(b) If used for the purposes of a rural home, the homestead shall consist of:
(1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or
(2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.
(c) A homestead is considered to be urban if, at the time the designation is made, the property is:
(1) located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision; and
(2) served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality or under contract to a municipality: (A) electric; (B) natural gas; (C) sewer; (D) storm sewer; and (E) water.

B. I understand that the lender making the Extension of Credit is  LONG BEACH MORTGAGE COMPANY
(the "Lender").

C. The undersigned includes all owners and spouses of owners of the Property and all borrowers named in the Note.

-8034(TX) (0310)                              Page 2 of 8                              Form 3185   1/01 (rev.10/03)

Title Data, Inc. SV TDI33811 MG 2006073761.002

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

D. The Extension of Credit is secured by a voluntary lien on the Property created under a written agreement with the consent of all owners and all spouses of owners, and execution of this Texas Home Equity Affidavit and Agreement is deemed evidence of such consent.

E. The Extension of Credit is of a principal amount that, when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the Property, does not exceed eighty (80%) of the fair market value of the Property on the date the Extension of Credit is made.

F. I have not paid any fee or charge that is not disclosed in the HUD-1 or HUD-1A Settlement Statement.

G. Neither the Lender nor any other party has required any additional collateral (real or personal property), other than the Property described in the Security Instrument, to secure the Extension of Credit.

H. The Property is not designated for agricultural use as provided by statutes governing property tax, unless such Property is used primarily for the production of milk.

I. The Extension of Credit is the only loan made pursuant to Section 50(a)(6), Article XVI of the Texas Constitution that will be secured by the Property at the time the Extension of Credit is funded.

J. The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner with a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Notice").

K. The Note and Security Instrument have not been signed before one business day after the date that the owner of the Property received a final itemized disclosure of the actual fees, points, interest, costs, and charges that would be charged at closing or a bona fide emergency or other good cause exists and the owner of the Property hereby consents to the Lender providing or modifying such final itemized disclosure on the date of the signing of the Note and Security Instrument and execution of this Texas Home Equity Affidavit and Agreement is deemed evidence of such consent.

L. If I am an owner of the Property, I received the Notice in English. If the discussions with the borrowers named in the Note were conducted primarily in a language other than English, the borrowers named in the Note received from Lender, or Lender's representative, before closing, an additional copy of the Notice translated into the written language in which the discussions were conducted.

M. The Extension of Credit is being closed, that is I am signing the loan documents, at the office of the Lender, an attorney at law, or a title company.

N. It has been at least one year since the closing date of any other extension of credit made pursuant to Section 50(a)(6), Article XVI of the Texas Constitution secured by the Property, unless (i) this Extension of Credit is a refinance of a prior extension of credit pursuant to Section 50(a)(6), Article XVI of the Texas Constitution, and is being made to cure the failure of any lender or holder of the prior extension of credit to comply with its obligations under the prior extension of credit (referred to here as a cure refinance) or (ii) the prior extension of credit was a cure refinance, in which case it has been at least one year since the closing date of the most recent extension of credit prior to a cure refinance.

O. No owner of the Property has been required to apply the proceeds of this Extension of Credit to repay another debt, unless such other debt, if any, is a debt secured by the Property or is a debt to another lender.

P. No owner of the Property has been required to assign wages as security for the Extension of Credit.

Q. No owner of the Property has signed an instrument in which applicable blanks were left to be filled in. There are no blanks in this Texas Home Equity Affidavit and Agreement, the Note, or the Security Instrument.

R. No owner of the Property has signed a confession of judgment or given a power of attorney to the Lender or to a third person to confess judgment or to appear for any owner of the Property in a judicial proceeding.

S. To the best of my knowledge and belief, all owners of the Property, after receiving a copy of all documents signed by them, will sign a receipt acknowledging the delivery of such copies.

T. I have been notified in the Security Instrument of the right of the owner and the spouse of any owner to rescind the Extension of Credit without penalty or charge within three (3) days after the closing.

U. The Lender and each owner of the Property have signed a written acknowledgment as to the fair market value of the Property on the date the Extension of Credit is made.

-8034(TX) (0310)                           Page 3 of 6                    Initials _____
                                                                          Form 3185   1/01 (rev.10/03)

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

V. The Property is not being purchased with any part of the proceeds of the Extension of Credit.

W. Unless Lender otherwise agrees in writing, all borrowers named in the Note shall occupy the Property as their homestead pursuant to the terms of the Security Instrument.

X. I understand that the Extension of Credit is not a form of open-end account that may be debited from time to time or under which credit may be extended from time to time. Lender, at its option, may make monetary advances to protect the Property (i.e. pay real estate taxes, hazard insurance payments, etc.) in accordance with the Security Instrument.

Y. I understand that the Note, Security Instrument, and this Texas Home Equity Affidavit and Agreement define the terms of the Extension of Credit and are to be construed as an entirety.

II.   AGREEMENT PROVISIONS:

A. No Personal Liability in the Absence of Actual Fraud.  I understand that pursuant to Section 50(a)(6)(C), Article XVI of the Texas Constitution the Extension of Credit is without recourse for personal liability against each owner of the Property and the spouse of each owner and that Lender and its successors and assigns can enforce the promises and obligations in the Note and the Security Instrument solely against the Property, unless an owner or spouse of an owner obtains the Extension of Credit by actual fraud.

B. Inducement and Reliance.  I understand that my execution of this Texas Home Equity Affidavit and Agreement is made to induce Lender and its successors and assigns to make or purchase the Extension of Credit, and that Lender and its assigns will rely on it as additional consideration for making or purchasing the Extension of Credit. I also understand that each of the statements made in the Representations and Warranties Section is material and will be acted upon by the Lender and its assigns, and that if such statement is false or made without knowledge of the truth, the Lender and its assigns will suffer injury.

C. Remedies in the Event of Actual Fraud.  If any owner of the Property, or the spouse of an owner, obtains the Extension of Credit by actual fraud, then each owner, spouse of each owner and all borrowers named in the Note agree to indemnify and save Lender and its successors and assigns harmless against any loss, costs, damages, attorneys' fees, expenses and liabilities which Lender may incur or sustain in connection with such actual fraud and any court action arising therefrom and will pay the same upon demand. In addition, the borrowers named in the Note may become personally liable for repayment of the Extension of Credit.

D. Opportunity for Lender to Comply.  It is agreed that, except as required by law, the Lender or any holder of the Note for the Extension of Credit shall not forfeit any principal or interest on the Extension of Credit by reason of failure by Lender or holder to comply with its obligations under the Extension of Credit, unless the Lender or holder of the Note fails to correct the failure to comply not later than the 60th day after the borrower notifies the Lender or holder of the Note of its failure to comply.

E. Tax Advice.  It is agreed that it is the borrower's responsibility to determine any and all aspects of tax considerations related to the Extension of Credit. I have not relied on any tax advice provided by Lender or Lender's representatives. It is my responsibility to seek and obtain independent tax advice.

-8034(TX) (0310)                          Page 4 of 6                          Initials: ____  Form 3185   1/01 (rev.10/03)

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

### III.  STATEMENT UNDER OATH

I hereby swear under oath that the representations and warranties referred to and set forth in Section I above are true and correct. I understand that this Texas Home Equity Affidavit and Agreement is part of the Extension of Credit documentation.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW, OR A TITLE COMPANY BY ALL OWNERS OF THE PROPERTY, SPOUSES OF OWNERS, AND BORROWERS NAMED IN THE NOTE. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

_____
(Borrower or Owner or Spouse of Owner)
DAVID L. GLASSEL

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

-8034(TX) (0310)                    Page 8 of 8                    Form 3185  1/01 (rev.10/03)

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

SWORN TO AND SUBSCRIBED before me on this

[PERSONALIZED SEAL]

9th day of June 2006.

_Sandra Flores_
Notary Public

_Sandra Flores_
Printed Name of Notary

My Commission Expires: 8/22/07

[SEAL: SANDRA FLORES NOTARY PUBLIC, STATE OF TEXAS COMMISSION EXPIRES AUGUST 22, 2007]

ADVISORY NOTICE

ALL STATEMENTS IN THE FOREGOING TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT ARE MADE UNDER OATH. IF ANY SUCH STATEMENT IS MADE WITH KNOWLEDGE THAT SUCH STATEMENT IS FALSE, THE PERSON MAKING SUCH FALSE STATEMENT MAY BE SUBJECT TO CIVIL AND CRIMINAL PENALTIES UNDER APPLICABLE LAW, MAY BE PERSONALLY LIABLE ON THE NOTE AND MAY CAUSE ALL OTHER BORROWERS NAMED IN THE NOTE TO BE PERSONALLY LIABLE ON THE NOTE.

At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blackouts, additions and changes were present at the time the instrument was filed and recorded.

8034(TX) (0510)                    Page 6 of 8                    Form 3185 1(0)(1) (Rev.10/03)

FILED FOR RECORD

06 JUN 30 AM 10: 58

_Mark Turnbull_
COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF MONTGOMERY
I hereby certify this instrument was filed in File Number Sequence on the date and at the time stamped herein by me and was duly RECORDED in the Official Public Records of Real Property at Montgomery County, Texas.

JUN 30 2006



_Mark Turnbull_
County Clerk
Montgomery County, Texas

Title Data, Inc.  SV TDI33811 MG 2006073761.006

We hereby certify this to be a true and correct copy of the Original Document
Texas Nations Title Agency, Inc.
By:

| A. **Settlement Statement** | U.S. Department of Housing and Urban Development | OMB No. 2502-0265 |
|---|---|---|

**B. TYPE OF LOAN**

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 06TB00109 | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals. "Adjustments for Items Unpaid By Seller are based on estimated amounts, and are subject to adjustment by Borrower(s) and Seller(s) when actual amounts become available.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| DAVID GLASSEL<br>2119 Old Ox Rd<br>Houston Tx. 77386 | | Long Beach Mortgage Company<br>2745 N DALLAS PKWY STE 100<br>PLANO, TX  75093-8729 |

| G. Property Location | H. Settlement Agent<br>Texas Nations Title Agency, Inc. | |
|---|---|---|
| 2119 OLD OX RD.<br>S898501 - SPRING FOREST 01, BLOCK 3, LOT<br>Spring, TX 77386<br>Montgomery County | Place of Settlement<br>3 Riverway, Suite 725<br>Houston, TX 77056 | I. Settlement Date<br>6/9/06<br>Disbursement Date<br>6/14/06 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. | | 402. | |
| 103. Settlement charges to borrower (line 1400) | 34,735.48 | 403. | |
| 104. Payoff to Aegis Funding Corporation | 151,458.92 | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. | | 406. | |
| 107. | | 407. | |
| 108. | | 408. | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | 186,194.40 | **420. Gross Amount Due To Seller** | |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | | 501. Deposit or earnest money | |
| 202. Principal amount of new loan(s) | 204,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of 1st mtg loan | |
| 205. Lender Credit | 2,555.69 | 505. Payoff of 2nd mtg loan | |
| 206. | | 506. Payoff of 3rd mtg loan | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. | | 510. | |
| 211. | | 511. | |
| 212. | | 512. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | 206,555.69 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross amount due from borrower (line 120) | 186,194.40 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 206,555.69 | 602. Less reductions in amt. due seller (line 520) | |
| **303. Cash        To Borrower** | 20,361.29 | **603. Cash        To Seller** | 0.00 |

THIS IS IMPORTANT TAX INFORMATION AND IS BEING FURNISHED TO THE INTERNAL REVENUE SERVICE. IF YOU ARE REQUIRED TO FILE A RETURN, A NEGLIGENCE PENALTY OR OTHER SANCTION WILL BE IMPOSED ON YOU IF THIS ITEM IS REQUIRED TO BE REPORTED AND THE IRS DETERMINES THAT IT HAS NOT BEEN REPORTED.

HUD-1 (3-86)



EXHIBIT
1-D

```
                                    0·%

                          204,600·X
                                3·X
                          6,120·00%

                             25·00+
                          1,020·00+
                          1,045·00%

                            325·00+
                          1,040·00+
                            300·00+
                              1·00+
                            362·00+
                            150·00+
                             35·00+
                             45·00+
                            297·69+
                          2,555·69%
```

| L.   Settlement Charges | | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price $ | | | | | |
| 701. $ | | | | | |
| 702. $ | | | | | |
| 703. $ | | | | | |
| 704. Commission paid at settlement | | | | | |
| 800. Items Payable in Connection With Loan | | | | | |
| 801. Loan Origination Fee   % | | | | | |
| 802. Loan Discount   %         to Long Beach Mortgage Company | | | | 4,080.00 | |
| 803. Appraisal Fee to Woodruff & Associates | | | | 390.00 | |
| 804. | | | | | |
| 805. | | | | | |
| 806. | | | | | |
| 807. | | | | | |
| 808. Origination Fee to Tri-Cities Mortgage | | | | 1,020.00 | |
| 809. | | | | | |
| 810. | | | | | |
| 811. YSP By Long Beach Mortgage To Tri-cities Mtg. POC $2,040.00 | | | | | |
| 900. Items Required By Lender To Be Paid In Advance | | | | | |
| 901. Interest  from 6/14/06 to 7/1/06  @ 46.07 /day | | | | 817.19 | |
| 902. Mortgage Insurance Premium for          months to | | | | | |
| 903. Hazard Insurance Premium for      12   months to  Texas Select Lloyds | | | | 1,637.00 | |
| 904. Flood Insurance Premium for          months to | | | | | |
| 905.                                   months to | | | | | |
| 1000. Reserves Deposited With Lender | | | | | |
| 1001. Hazard Insurance | months @ $ | | per month | | |
| 1002. Mortgage Insurance | months @ $ | | per month | | |
| 1003. Flood Insurance | months @ $ | | per month | | |
| 1004. City Taxes | months @ $ | | per month | | |
| 1005. County Taxes | months @ $ | | per month | | |
| 1006. Condo H/A Dues | months @ $ | | per month | | |
| 1007. Special Assessments | months @ $ | | per month | | |
| 1008. Aggregate Adjustment Amount | months @ $ | | per month | | |
| 1100. Title Charges | | | | | |
| 1101. | | | | | |
| 1102. | | | | | |
| 1103. | | | | | |
| 1104. | | | | | |
| 1105. | | | | | |
| 1106. | | | | | |
| 1107. | | | | | |
| 1108. Title Insurance to Texas Nations Title Agency, Inc. - Irving | | | | 1,040.00 | |
| 1109. Lender's Coverage: $            FEE: | | | | | |
| 1110. Owner's Coverage: $            FEE: | | | | | |
| 1111. Escrow Fee to Acosta/Haden | | | | 300.00 | |
| 1112. Guaranty Fee to Texas Nations Title Agency, Inc. - Irving | | | | 1.00 | |
| 1113. T19/T30/T30/T3/T42/T42.1 to Texas Nations Title Agency, Inc. - Irving | | | | 392.00 | |
| 1200. Government Recording and Transfer Charges | | | | | |
| 1201. Recording Fees: | Deed: | Mortgage: 150.00 | Release: | 150.00 | |
| 1202. City/County/stamps: | Deed: | Mortgage: | | | |
| 1203. State tax/stamps: | Deed: | Mortgage: | | | |
| 1204. Tax Cert Fee to National Tax Net | | | | 35.00 | |
| 1205. Courier Fee to Acosta/Haden | | | | 45.00 | |
| 1300. Additional Settlement Charges | | | | | |
| 1301. Survey to Texas Land Coordinators | | | | 297.69 | |
| 1302. | | | | | |
| 1303. Past Due Taxes to Montgomery County | | | | 19,470.60 | |
| 1304. Debt Payoff to Royal Oak Bank | | | | 5,130.00 | |
| 1305. | | | | | |
| 1306. | | | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | | 34,735.48 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____

DAVID GLASSEL

_____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

_____            6/9/06
Texas Nations Title Agency, Inc.            Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.          File #:   06TB00109

Loan #: ▬

# AFFIDAVIT OF RECEIPT OF FINAL HUD

This is to certify that I (we), the undersigned, received a final itemized disclosure of the actual fees, points, interest, c and charges, (HUD Statement) at least one business day prior to the loan closing date. This HUD Statement is the Disclosure REQUIRED BY SECTION 50(a)(6)(M) (ii), ARTICLE XVI, OF THE TEXAS CONSTITUTION.

The date that I(we) received the final itemized disclosure (HUD Statement) was at least one business day prior to the closing date.

I (We) further certify that I (we) have not been instructed, requested or otherwise directed to falsely attest that I received the final itemization (HUD Statement) at least one business day prior to the loan closing date. I (We) understand that lender is relying upon this affidavit in making the loan for which the undersigned has applied, and the lender would not make loan were it not for this assurance that the final itemization (HUD Statement) was properly received at least one (1) business prior to the loan closing date.

I (We) further acknowledge that I (we) understand the penalties and liabilities for any false or misleading information forth herein, and that any false or misleading information could result in both criminal and civil action and/or penalties against u

Signed _____  Date 6-09-06
DAVID L. GLASSEL

Signed _____  Date _____

Signed _____  Date _____

Signed _____  Date _____

Signed _____  Date _____

Signed _____  Date _____

Signed _____  Date _____

Signed _____  Date _____

SWORN AND SUBSCRIBED to by the aforesaid Affiant(s),  David L. Glassel

under oath and before me, the undersigned authority, on this the 9t day of Jun 2006

Sandra Flores
Notary Public, State of Texas

My Commission Expires 8/2007

PB844.1003



SANDRA FLORES
NOTARY PUBLIC, STATE OF TEXAS
COMMISSION EXPIRES
AUGUST 22, 2007

EXHIBIT
1-E



### AFFIDAVIT OF FACTS
### AND
### RECEIPT OF DOCUMENTS

STATE OF   TEXAS

COUNTY OF   MONTGOMERY

BEFORE ME, the undersigned authority personally appeared   DAVID L. GLASSEL

who, after being duly sworn by me, stated upon their oaths as follows:

We are over the age of eighteen (18) and have personal knowledge of the facts herein set forth.

We are this day obtaining a loan ("Loan") from   LONG BEACH MORTGAGE COMPANY
("Lender") which Loan constitutes and
includes cash advanced to us from our Texas Homestead ("Homestead") commonly known as 2119 OLD OX ROAD,
SPRING, TX 77386                                                              and legally described as:
LOT SIXTY-FIVE (65), BLOCK THREE (3), SECTION ONE (1), SPRING FOREST SUBDIVISION,
LOCATED IN THE MONTGOMERY COUNTY SCHOOL LAND SURVEY, ABSTRACT NO. 351, ACCORDING TO THE
MAP OR RECORD IN VOLUME 7, PAGE 379, MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

More than twelve (12) days have lapsed since (i) we submitted our Loan Application to Lender for this Loan, and (ii) the date Lender provided us with the Notice of Extension of Credit.

The Loan was not closed before the first anniversary date of the closing of any other extension of credit described by Subsection (a)(6) of Section 50, Article XVI, Texas Constitution Upon the Homestead.

We have not previously made a loan under Subsection (a)(6) of Section 50, Article XVI, Texas Constitution upon the Homestead, unless such prior loan has been fully paid and released or this Loan is being used to fully discharge such prior loan.

We do not have or claim any other land as homestead for tax or other purposes except the land described in Schedule A of the Commitment for Title Insurance for this Loan.

Any business operated by the undersigned, if any, and situated upon land owned or leased by the undersigned is not subject to an extension of credit pursuant to Subsection (a)(6) of Section 50, Article XVI, Texas Constitution.

The residence, owned or leased by the undersigned, if any, at which the undersigned lives is not currently subject to an extension of credit pursuant to Subsection (a)(6) of Section 50, Article XVI, Texas Constitution, unless this Loan is being used to fully pay and discharge any such prior loan.

All of the land described in Schedule A of the Commitment for Title Insurance for this Loan is the homestead of the owner and the owner's spouse.

No portion of the land described in Schedule A of the Commitment for Title Insurance for this Loan is non-homestead property of the owner or owner's spouse.

The undersigned owner (and spouse) of the land described in Schedule A of the Commitment for Title Insurance for this Loan, do not claim other land as homestead, unless that other land is described in this affidavit.

The Lender has not required as a condition of the Loan any of the following:

    (a)    The Loan to be secured by an assignment of wages, or
    (b)    Additional real or personal property other than the Homestead.

We were not required to sign, nor did we sign, any Loan Documents in which blanks were left to be filled in.

Our Homestead is not designated for agricultural use as provided by Statutes governing property tax.

We acknowledge that Lender has advised us that we may, within three (3) days after the extension of credit under the Loan, rescind the extension of credit without penalty or change.

PB390-1.0304


EXHIBIT
1-F

We acknowledge receipt of a copy of all documents which we signed in connection with the Loan.

We acknowledge that the Loan was closed at the Offices of   TEXAS NATIONS TITLE

Further, Affiants saith not.

EXECUTED this the   9th   day of June,   2006

_____          _____
Borrower                                  Borrower
DAVID L. GLASSEL

_____          _____
Borrower                                  Borrower

_____          _____
Borrower                                  Borrower

_____          _____
Borrower                                  Borrower

THE STATE OF   Texus

COUNTY OF   Harris

This instrument was acknowledged before me on   June 9, 2006
by DAVID L. GLASSEL

SANDRA FLORES
NOTARY PUBLIC, STATE OF TEXAS
COMMISSION EXPIRES:
AUGUST 22, 2007

_____
Notary Public, in and for
The State of Texas
Notary Stamp:  Name of Notary and Date Commission Expires:   8/22

THE STATE OF

COUNTY OF

This instrument was acknowledged before me on

by

_____
Notary Public, in and for
The State of Texas
Notary Stamp:  Name of Notary and Date Commission Expires:

PB390-2.0304

Page 2 of 2

Loan No:
Borrower:    DAVID L. GLASSEL

### TEXAS HOME EQUITY
### ACKNOWLEDGMENT OF LOAN CLOSING DOCUMENTS
### RECEIVED BY BORROWER

The following is a listing of all loan closing documents provided to TEXAS NATIONS TITLE

- Closing Instructions
- Special Requirements
- Texas Home Equity Addendum to Closing Instructions Special Requirements
- Applicant Identification Verification
- Truth In Lending Disclosure Statement
- Borrowers Must Initial Note
- Texas Home Equity FNMA Note
- Texas Home Equity FNMA Security Instrument and any Rider(s)
- Notice of Right of Rescission Instructions to Title Company
- Notice of Right of Rescission
- Confirmation of Election Not to Rescind or Cancel Transaction
- Notice of Right of Rescission
- Confirmation of Election Not to Rescind or Cancel Transaction
- Mineral Rights Agreement
- Loan Agreement Notice
- Designated Location for Notice
- Texas Home Equity Affidavit and Agreement
- Texas Home Equity Fair Market Value Acknowledgment
- Occupancy Affidavit
- Survey Receipt and Acknowledgment
- Tax and Insurance Information Sheet
- Compliance Agreement
- Name Affidavit(s)
- Collateral Protection Insurance Notice
- Borrower Certificate Net Tangible Benefit
- Notice of Furnishing Negative Information
- First Mortgage Payment Due Date Acknowledgment
- Servicing Disclosure Statement
- Hazard Insurance Requirements and Authorization
- Form 4506 Request For Copy of Tax Return
- Affiliated Business Arrangement Disclosure Statement
- Borrower's Certification & Authorization
- First Payment Letter
- LBMC/WAMU Servicing Letter
- Privacy Policy
- Confirmation of Taxpayer Identification Numbers
- Request for Taxpayer Identification Number and Certification Form W 9
- Texas Home Equity Acknowledgment of Loan Closing Documents Received by Borrower

PBA22-1.0106                          Page 1 of 2



EXHIBIT
1-G

The undersigned ("Borrower") acknowledges receipt of all loan closing documents specified above with the exception of documents indicated with (*) to identify Closing Instructions, Closing Instruction Addenda, and Special Requirement forms that do not require the Borrower's signature.

Date:     June  9, 2006

_____ -Borrower          _____ -Borrower
DAVID L. GLASSEL

_____ -Borrower          _____ -Borrower

_____ -Borrower          _____ -Borrower

_____ -Borrower          _____ -Borrower

The undersigned agent for  TEXAS NATIONS TITLE                                                hereby confirms that copies of all loan closing documents signed by the Borrower were given to the Borrower. The above itemization of loan closing documents, with the exception of items indicated with (*), is an accurate listing of loan closing documents provided.

TEXAS NATIONS TITLE

By: _____
       Closing Agent

PBA22-2.1205                          Page 2 of 2

DATE: June  9, 2006
BORROWER:   DAVID L. GLASSEL
LOAN #: ▇▇▇▇▇▇
PROPERTY ADDRESS:   2119 OLD OX ROAD
SPRING, TX 77386

### DISCOUNT POINT ACKNOWLEDGMENT

The above referenced loan is an extension of credit covered by Article XVI, Section 50(a)(6) of the Texas Constitution.

I acknowledge that I am electing to pay discount point(s) in this extension of credit transaction in order to obtain a lower interest rate. I acknowledge that I could have obtained a loan with fewer or no discount point(s). I that the loan would have had a correspondingly higher interest rate. I acknowledge that discount point(s) "interest" under Texas law and that, accordingly, they are excluded from the 3% limit on fees which subject (E) of Article XVI, Section 50(a)(6) permits the Lender to require the Owner/Borrower to pay in order for Lender to originate, evaluate, maintain, record, insure or service an extension of credit under Article X Section 50(a)(6).

_____  6-09-06   _____
Owner/Borrower                    Date      Owner/Borrower
DAVID L. GLASSEL


_____          _____
Owner/Borrower                    Date      Owner/Borrower


BE SURE YOU RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.

CONV
# A6 - Discount Point Acknowledgment
FE-5806 (0406)



EXHIBIT
1-H

Loan No: █████████
Borrower:     DAVID L. GLASSEL

## TEXAS HOME EQUITY OCCUPANCY AFFIDAVIT

The undersigned (whether one or more, "Borrower") having been duly sworn, according to law, upon oath deposes and says:

1.     That Borrower is named in a Note and/or Security Instrument ("Security Instrument") evidencing and securing a loan ("Loan") made by   LONG BEACH MORTGAGE COMPANY

("Lender")

constituting a lien on the following real property ("Property"):   2119 OLD OX ROAD, SPRING, TX 77386

2.     That Borrower understands that Borrower's occupancy of the Property as Borrower's primary, full-time residence is a condition precedent to obtaining the Loan, and that in order to induce Lender to make the Loan, Borrower represents, understands and agrees that Borrower occupies the Property as Borrower's primary and permanent residence, and that Borrower does not have any other permanent and primary residence.

3.     Lender has advised Borrower that Lender intends to assign the Loan and that Lender may not be able to do so or may be required to repurchase the Loan and may be damaged in certain other respects if Borrower fails to occupy the Property at the time and in the manner stated above.   Borrower agrees to indemnify Holder and hold Holder harmless from and against any and all loss, damage, liability, or expense, including costs and reasonable attorneys' fees, to which Holder may be put or which Holder may incur by reason of or in connection with Borrower's failure to occupy the Property as stated above.

The foregoing statements are true and correct to the best of Borrower's knowledge and belief.

Date:     June  9, 2006

_____
DAVID L. GLASSEL          -Borrower

_____
                          -Borrower

_____
                          -Borrower

_____
                          -Borrower

_____
                          -Borrower

_____
                          -Borrower

_____
                          -Borrower

_____
                          -Borrower

STATE OF TEXAS
COUTY OF Harris

Sworn to and subscribed before me on the 9th day of June 2006.

_____
                          Notary Public

Sandra Flores
                          (Printed Name)

My commission expires: 8·22·07

PB082.1005

SANDRA FLORES
NOTARY PUBLIC, STATE OF TEXAS
COMMISSION EXPIRES
AUGUST 22, 2007


EXHIBIT
1-I

Doc# 2013007699
Pages 2

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

Loan #: 0698166543

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interests secured thereby, all liens, and any rights due or to become due thereon, to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR LONG BEACH MORTGAGE LOAN TRUST 2006-7, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Deed of Trust dated 06/09/2006 executed by DAVID L. GLASSEL in the amount of $204,000.00 and recorded on 06/30/2006 as Instrument # 2006-073760, in Book n/a, Page n/a in the records of Real Property of MONTGOMERY County, Texas.

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

IN WITNESS WHEREOF, this Assignment is executed on 01/22/2013 (MM/DD/YYYY).
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, Its Attorney-In-Fact

By: _____
    Lashonda Anderson
    VICE PRESIDENT

STATE OF LOUISIANA   PARISH OF OUACHITA
On 01/22/2013 (MM/DD/YYYY), before me appeared Lashonda Anderson, to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-In-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Document Prepared By: Robert E. Fletcher - c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
(800)346-9152
When Recorded Return To: JPMorgan Chase Bank, NA, C/O NTC 2100 Alt. 19 North, Palm Harbor, FL 34683
JPCAS 18781486 -3 WAMU CI4533723   T0413012913   [C] FRMTX1_JPCAS2

*18781486*

EXHIBIT
1-J

442541268_0698166543

Doc# 2013007699
**Pages 2**

E-FILED FOR RECORD
01/25/2013   10:29AM

*Mark Turnbull*

COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF MONTGOMERY
I hereby certify this instrument was e-FILED in
file number sequence on the date and at the time
stamped herein by me and was duly e-RECORDED in
the Official Public Records of Montgomery County, Texas.

01/25/2013

*Mark Turnbull*

County Clerk
Montgomery County, Texas

442541268_0698166543

GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
830 SELECT PORTFOLIO SERVICING
PO BOX 65250
SLC UT 84165
12232173
Book 10407 Pages 5957-5971
03/01/2016 04:19 PM 38.00

Recording Requested By and
When Recorded Mail To:

Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165-0250
Attn: Document Control

Space Above for Recording Information

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that JPMorgan Chase Bank, National Association (hereinafter "Master Servicer"), a national banking association organized and existing under the laws of the United States, and having its principal place of business at 1111 Polaris Parkway, Columbus, Ohio 43240, pursuant to authority granted to Master Servicer in certain agreements described in Exhibit A (individually, an "Agreement" and together, the "Agreements") and in the Limited Power of Attorney granted by Deutsche Bank National Trust Company as Trustee ("Trustee"), attached as a true and correct copy as Exhibit B, hereby constitutes and appoints **Select Portfolio Servicing, Inc.** (hereinafter "Sub-Servicer"), by and through its officers, as Master Servicer's true and lawful Attorney-In-Fact to act in the name, place and stead of Master Servicer, in connection with all mortgage or other loans serviced by Master Servicer pursuant to the Agreements, solely for the purpose of performing such acts and executing such documents in the name of Master Servicer in its capacity as Attorney-In-Fact for the Trustee.

This appointment shall apply only to those enumerated transactions for which the Trustee has appointed the Master Servicer as its Attorney-In-Fact pursuant to Exhibit B. Master Servicer hereby ratifies every act that Sub-Servicer may lawfully perform in exercising those powers by virtue hereof.

IN WITNESS WHEREOF, Master Servicer has executed this Limited Power of Attorney this 17th day of February, 2016.

JPMORGAN CHASE BANK, N.A.

By: _Barbara Campbell_

Name: Barbara Campbell
Title: Executive Director

STATE OF OHIO)
)SS:
COUNTY OF FRANKLIN)

On February 17, 2016, before me, a Notary Public in and for said State, personally appeared Barbara Campbell, known to me to be a Executive Director of JPMorgan Chase Bank, National Association that executed the above instrument, and also known to me to be the person who executed said instrument on behalf of such corporation and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

STARLENE L. STARLING
Notary Public, State of Ohio
My Comm. Expires 12-10-2018

Notary Public

EXHIBIT
1-K

## Exhibit A

Pooling and Servicing Agreement dated as of November 1, 2002 for Long Beach Mortgage Loan Trust 2002-5 Asset-Backed Certificates, Series 2002-5 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, Federal National Mortgage Association, Guarantor (with respect to the Class A-1 Certificates and the Class S-1 Certificates) and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of February 1, 2003 for Long Beach Mortgage Loan Trust 2003-1 Asset-Backed Certificates, Series 2003-1 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, Federal National Mortgage Association, Guarantor (with respect to the Class A-1 Certificates and the Class S-1 Certificates) and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of April 1, 2003 for Long Beach Mortgage Loan Trust 2003-2 Asset-Backed Certificates, Series 2003-2 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of June 1, 2003 for Long Beach Mortgage Loan Trust 2003-3 Asset-Backed Certificates, Series 2003-3 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of July 1, 2003 for Long Beach Mortgage Loan Trust 2003-4 Asset-Backed Certificates, Series 2003-4 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of February 1, 2004 for Long Beach Mortgage Loan Trust 2004-1 Asset-Backed Certificates, Series 2004-1 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of May 1, 2004 for Long Beach Mortgage Loan Trust 2004-2 Asset-Backed Certificates, Series 2004-2 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of June 1, 2004 for Long Beach Mortgage Loan Trust 2004-3 Asset-Backed Certificates, Series 2004-3 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of June 1, 2004 for Long Beach Mortgage Loan Trust 2004-3 Asset-Backed Certificates, Series 2004-3 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of August 1, 2004 for Long Beach Mortgage Loan Trust 2004-5 Asset-Backed Certificates, Series 2004-5 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of September 1, 2004 for Long Beach Mortgage Loan Trust 2004-4 Asset-Backed Certificates, Series 2004-4 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of October 1, 2004 for Long Beach Mortgage Loan Trust 2004-6 Asset-Backed Certificates, Series 2004-6 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of January 1, 2005 for Long Beach Mortgage Loan Trust 2005-1 Asset-Backed Certificates, Series 2005-1 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

### Exhibit A (continued)

Pooling and Servicing Agreement dated as of January 1, 2005 for Long Beach Mortgage Loan Trust 2005-1 Asset-Backed Certificates, Series 2005-1 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of April 1, 2005 for Long Beach Mortgage Loan Trust 2005-2 Asset-Backed Certificates, Series 2005-2 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of July 1, 2005 for Long Beach Mortgage Loan Trust 2005-WL1 Asset-Backed Certificates, Series 2005-WL1 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of August 1, 2005 for Long Beach Mortgage Loan Trust 2005-WL2 Asset-Backed Certificates, Series 2005-WL2 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of September 1, 2005 for Long Beach Mortgage Loan Trust 2005-3 Asset-Backed Certificates, Series 2005-3 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of November 1, 2005 for Long Beach Mortgage Loan Trust 2005-WL3 Asset-Backed Certificates, Series 2005-WL3 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Seller and Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of January 1, 2006 for Long Beach Mortgage Loan Trust 2006-WL2 Asset-Backed Certificates, Series 2006-WL2 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Seller and Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of January 1, 2006 for Long Beach Mortgage Loan Trust 2006-WL3 Asset-Backed Certificates, Series 2006-WL3 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Seller and Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of January 1, 2006 for Long Beach Mortgage Loan Trust 2006-WL1 Asset-Backed Certificates, Series 2006-WL1 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Seller and Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of February 1, 2006 for Long Beach Mortgage Loan Trust 2006-1 Asset-Backed Certificates, Series 2006-1 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Seller and Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of March 1, 2006 for Long Beach Mortgage Loan Trust 2006-2 Asset-Backed Certificates, Series 2006-2 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Seller and Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of April 1, 2006 for Long Beach Mortgage Loan Trust 2006-3 Asset-Backed Certificates, Series 2006-3 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Seller and Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of May 1, 2006 for Long Beach Mortgage Loan Trust 2006-A Asset-Backed Certificates, Series 2006-A between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Seller and Master Servicer, and Deutsche Bank National Trust Company, Trustee.

**Exhibit A (continued)**

Pooling and Servicing Agreement dated as of May 1, 2006 for Long Beach Mortgage Loan Trust 2006-4 Asset-Backed Certificates, Series 2006-4 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Seller and Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of June 1, 2006 for Long Beach Mortgage Loan Trust 2006-5 Asset-Backed Certificates, Series 2006-5 between Long Beach Securities Corp., Depositor, Long Beach Mortgage Company, Seller and Master Servicer, and Deutsche Bank National Trust Company, Trustee.

Pooling and Servicing Agreement dated as of July 1, 2006 for Long Beach Mortgage Loan Trust 2006-6 Asset-Backed Certificates, Series 2006-6 between Long Beach Securities Corp., Depositor, Washington Mutual Bank, Seller and Servicer, and Deutsche Bank Trust Company Delaware, Trustee.

Pooling and Servicing Agreement dated as of August 1, 2006 for Long Beach Mortgage Loan Trust 2006-7 Asset-Backed Certificates, Series 2006-7 between Long Beach Securities Corp., Depositor, Washington Mutual Bank, Seller and Servicer, and Deutsche Bank Trust Company Delaware, Trustee.

Pooling and Servicing Agreement dated as of September 1, 2006 for Long Beach Mortgage Loan Trust 2006-8 Asset-Backed Certificates, Series 2006-8 between Long Beach Securities Corp., Depositor, Washington Mutual Bank, Seller and Servicer, and Deutsche Bank Trust Company Delaware, Trustee.

Pooling and Servicing Agreement dated as of October 1, 2006 for Long Beach Mortgage Loan Trust 2006-9 Asset-Backed Certificates, Series 2006-9 between Long Beach Securities Corp., Depositor, Washington Mutual Bank, Seller and Servicer, and Deutsche Bank Trust Company Delaware, Trustee.

Pooling and Servicing Agreement dated as of November 1, 2006 for Long Beach Mortgage Loan Trust 2006-10 Asset-Backed Certificates, Series 2006-10 between Long Beach Securities Corp., Depositor, Washington Mutual Bank, Seller and Servicer, and Deutsche Bank Trust Company Delaware, Trustee.

Pooling and Servicing Agreement dated as of December 1, 2006 for Long Beach Mortgage Loan Trust 2006-11 Asset-Backed Certificates, Series 2006-11 between Long Beach Securities Corp., Depositor, Washington Mutual Bank, Seller and Servicer, and Deutsche Bank Trust Company Delaware, Trustee.

n156 BBC, BBD, BBE, BBF, BBG, BBJ, BBL, BBM, BBP, BBQ, BBR, BBT, BBU, BBW, BBX, BBY, BCA, BCC, BCD, BCE, BCF, BCH, BCJ, BCK, BCL, BCM, BCN, BCP, BCQ, BCR, BCS, BCT

Exhibit B.

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that Deutsche Bank National Trust Company, a national banking association organized and existing under the laws of the United States, and having its usual place of business at 1761 East St. Andrew Place, Santa Ana, California, 92705, as Trustee (the "Trustee") for the Trust pursuant to the Agreements (the "Agreement") listed on Exhibit A by and between JPMorgan Chase, National Association (the "Servicer"), hereby constitutes and appoints the Servicer, by and through the Servicer's officers, the Trustee's true and lawful Attorney-in-Fact, in the Trustee's name, place and stead and for the Trustee's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Agreement solely for the purpose of performing such acts and executing such documents in the name of the Trustee necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is acting as Trustee for various certificateholders (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which JPMorgan Chase, National Association is acting as the Servicer.

This Appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreement shall be construed to the contrary:

1. The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided that (i) said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and (ii) otherwise conforms to the provisions of the Agreement.

2. The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3. The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4. The completion of loan assumption agreements.

5. The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6. The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7. The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8.  The full enforcement of and preservation of the Trustee's interests in the Mortgage Notes, Mortgages or Deeds of Trust, and in the proceeds thereof, by way of, including but not limited to, foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or the termination, cancellation or rescission of any such foreclosure, the initiation, prosecution and completion of eviction actions or proceedings with respect to, or the termination, cancellation or rescission of any such eviction actions or proceedings, and the pursuit of title insurance, hazard insurance and claims in bankruptcy proceedings, including, without limitation, any and all of the following acts:

    a.  the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

    b.  the preparation and issuance of statements of breach or non-performance;

    c.  the preparation and filing of notices of default and/or notices of sale;

    d.  the cancellation/rescission of notices of default and/or notices of sale;

    e.  the taking of deed in lieu of foreclosure;

    f.  the filing, prosecution and defense of claims, and to appear on behalf of the Trustee, in bankruptcy cases affecting Mortgage Notes, Mortgages or Deeds of Trust;

    g.  the preparation and service of notices to quit and all other documents necessary to initiate, prosecute and complete eviction actions or proceedings;

    h.  the tendering, filing, prosecution and defense, as applicable, of hazard insurance and title insurance claims, including but not limited to appearing on behalf of the Trustee in quiet title actions; and

    i.  the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8.a. through 8.h. above.

9.  With respect to the sale of property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation, the execution of the following documentation:

    a.  listing agreements;
    b.  purchase and sale agreements;
    c.  grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;
    d.  escrow instructions; and
    e.  any and all documents necessary to effect the transfer of property.

10.  The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

2

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall be effective as of February 4, 2016.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Solely to the extent that the Servicer has the power to delegate its rights or obligations under the Agreement, the Servicer also has the power to delegate the authority given to it by Deutsche Bank National Trust Company, as Trustee, under this Limited Power of Attorney, for purposes of performing its obligations and duties by executing such additional powers of attorney in favor of its attorneys-in-fact as are necessary for such purpose. The Servicer's attorneys-in-fact shall have no greater authority than that held by the Servicer.

Nothing contained herein shall: (i) limit in any manner any indemnification provided to the Trustee under the Agreement, (ii) limit in any manner the rights and protections afforded the Trustee under the Agreement, or (iii) be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Deutsche Bank National Trust Company except as specifically provided for herein. If the Servicer receives any notice of suit, litigation or proceeding in the name of Deutsche Bank National Trust Company, then the Servicer shall promptly forward a copy of same to the Trustee.

This limited power of attorney is not intended to extend the powers granted to the Servicer under the Agreement or to allow the Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreement.

The Servicer hereby agrees to indemnify and hold the Trustee and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by the Servicer, or its attorneys-in-fact, of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement or the earlier resignation or removal of the Trustee under the Agreement.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

3

IN WITNESS WHEREOF, Deutsche Bank National Trust Company, as Trustee for the Agreements listed on Exhibit A has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this 4th day of February, 2016.

Deutsche Bank National Trust Company,
as Trustee for the Agreements listed on Exhibit A

By: _____
Name: Karlene Benvenuto
Title: Assistant Vice President

Witness:
_____
Corey Robinson

Witness:
_____
Timothy Johnson

Prepared by:
_____
Name: Jonathan Leggett
Title:    Trust Administrator
Address:      Deutsche Bank National Trust Company
              1761 E. Saint Andrew Place
              Santa Ana, CA 92705

4

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ORANGE

On February 4, 2016 before me, Suzanne C. Patten, a Notary Public, personally appeared Karlene Benvenuto, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed that same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.
(SEAL)

SUZANNE C. PATTEN
Commission # 2075460
Notary Public - California
Orange County
My Comm. Expires Jul 21, 2018

Signature of Notary Public

5

Exhibit A

**Agreement**

This Pooling and Servicing Agreement is dated as of November 1, 2002 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer"), Federal National Mortgage Association, as Guarantor of the Class A-1 Certificates and the Class S-1 Certificates (the "Guarantor") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2002-5 Asset-Backed Certificates, Series 2002-5

**Agreement**

This Pooling and Servicing Agreement is dated as of February 1, 2003 (the "Agreement"),= among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer"), Federal National Mortgage Association, as Guarantor of the Class A-1 Certificates and the Class S-1 Certificates (the "Guarantor") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2003-1 Asset-Backed Certificates, Series 2003-1

**Agreement**

This Pooling and Servicing Agreement is dated as of April 1, 2003 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2003-2 Asset-Backed Certificates, Series 2003-2

**Agreement**

This Pooling and Servicing Agreement is dated as of June 1, 2003 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2003-3 Asset-Backed Certificates, Series 2003-3

**Agreement**

This Pooling and Servicing Agreement is dated as of July 1, 2003 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2003-4 Asset-Backed Certificates, Series 2003-4

**Agreement**

This Pooling and Servicing Agreement is dated as of February 1, 2004 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2004-1 Asset-Backed Certificates, Series 2004-1

**Agreement**

This Pooling and Servicing Agreement is dated as of May 1, 2004 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2004-2 Asset-Backed Certificates, Series 2004-2

**Agreement**

This Pooling and Servicing Agreement is dated as of June 1, 2004 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2004-3 Asset-Backed Certificates, Series 2004-3

**Agreement**

This Pooling and Servicing Agreement is dated as of September 1, 2004 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2004-4 Asset-Backed Certificates, Series 2004-4

**Agreement**

This Pooling and Servicing Agreement is dated as of August 1, 2004 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2004-5 Asset-Backed Certificates, Series 2004-5

**Agreement**

This Pooling and Servicing Agreement is dated as of October 1, 2004 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2004-6 Asset-Backed Certificates, Series 2004-6

**Agreement**

This Pooling and Servicing Agreement is dated as of January 1, 2005 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2005-1 Asset-Backed Certificates, Series 2005-1

**Agreement**

This Pooling and Servicing Agreement is dated as of April 1, 2005 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2005-2 Asset-Backed Certificates, Series 2005-2

**Agreement**

This Pooling and Servicing Agreement is dated as of July 1, 2005 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2005-WL1 Asset-Backed Certificates, Series 2005-WL1

**Agreement**

This Pooling and Servicing Agreement is dated as of August 1, 2005 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2005-WL2 Asset-Backed Certificates, Series 2005-WL2

**Agreement**

This Pooling and Servicing Agreement is dated as of September 1, 2005 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as Seller (the "Seller") and master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2005-3 Asset-Backed Certificates, Series 2005-3

**Agreement**

This Pooling and Servicing Agreement is dated as of November 1, 2005 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as seller (the "Seller") and master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as Trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2005-WL3 Asset-Backed Certificates, Series 2005-WL3

**Agreement**

This Pooling and Servicing Agreement is dated as of January 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as seller (the "Seller":) and master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-WL1 Asset-Backed Certificates, Series 2006-WL1

**Agreement**

This Pooling and Servicing Agreement is dated as of January 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as seller (the "Seller") and master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-WL2 Asset-Backed Certificates, Series 2006-WL2

**Agreement**

This Pooling and Servicing Agreement is dated as of January 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as seller (the "Seller") and master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-WL3 Asset-Backed Certificates, Series 2006-WL3

**Agreement**

This Pooling and Servicing Agreement is dated as of February 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as seller (the "Seller") and master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006- 1 Asset-Backed Certificates, Series 2006-1

**Agreement**

This Pooling and Servicing Agreement is dated as of March 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as seller (the "Seller") and master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-2 Asset-Backed Certificates, Series 2006-2

**Agreement**

This Pooling and Servicing Agreement is dated as of April 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as seller (the "Seller") and master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-3 Asset-Backed Certificates, Series 2006-3

**Agreement**

This Pooling and Servicing Agreement is dated as of May 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as seller (the "Seller") and master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-A Asset-Backed Certificates, Series 2006-A

**Agreement**

This Pooling and Servicing Agreement is dated as of May 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as seller (the "Seller") and master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-4 Asset-Backed Certificates, Series 2006-4

**Agreement**

This Pooling and Servicing Agreement is dated as of June 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Long Beach Mortgage Company, as seller (the "Seller") and master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as trustee (the "Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-5 Asset-Backed Certificates, Series 2006-5

**Agreement**

This Pooling and Servicing Agreement is dated as of July 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Washington Mutual Bank, as seller (the "Seller") and servicer (the "Servicer"), Deutsche Bank National Trust Company, as trustee (the "Trustee") and Deutsche Bank Trust Company Delaware, as Delaware trustee (the "Delaware Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-6 Asset-Backed Certificates, Series 2006-6

**Agreement**

This Pooling and Servicing Agreement is dated as of August 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Washington Mutual Bank, as seller (the "Seller") and servicer (the "Servicer"), Deutsche Bank National Trust Company, as trustee (the "Trustee") and Deutsche Bank Trust Company Delaware, as Delaware trustee (the "Delaware Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-7 Asset-Backed Certificates, Series 2006-7

**Agreement**

This Pooling and Servicing Agreement is dated as of September 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Washington Mutual Bank, as seller (the "Seller") and servicer (the "Servicer"), Deutsche Bank National Trust Company, as trustee (the "Trustee") and Deutsche Bank Trust Company Delaware, as Delaware trustee (the "Delaware Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-8 Asset-Backed Certificates, Series 2006-8

**Agreement**

This Pooling and Servicing Agreement is dated as of October 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Washington Mutual Bank, as seller (the "Seller") and servicer (the "Servicer"), Deutsche Bank National Trust Company, as trustee (the "Trustee") and Deutsche Bank Trust Company Delaware, as Delaware trustee (the "Delaware Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-9 Asset-Backed Certificates, Series 2006-9

**Agreement**

This Pooling and Servicing Agreement is dated as of November 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Washington Mutual Bank, as seller (the "Seller") and servicer (the "Servicer"), Deutsche Bank National Trust Company, as trustee (the "Trustee") and Deutsche Bank Trust Company Delaware, as Delaware trustee (the "Delaware Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-10 Asset-Backed Certificates, Series 2006-10

**Agreement**

This Pooling and Servicing Agreement is dated as of December 1, 2006 (the "Agreement"), among Long Beach Securities Corp., as depositor (the "Depositor"), Washington Mutual Bank, as seller (the "Seller") and servicer (the "Servicer"), Deutsche Bank National Trust Company, as trustee (the "Trustee") and Deutsche Bank Trust Company Delaware, as Delaware trustee (the "Delaware Trustee").

**Trust**

Long Beach Mortgage Loan Trust 2006-11 Asset-Backed Certificates, Series 2006-11

Select Portfolio Servicing
PO BOX 65250
Salt Lake City, UT
84165-0250



9171 9010 7643 2008 6443 07

DAVID L GLASSEL
2119 OLD OX ROAD
SPRING, TX 77386



EXHIBIT
1-L




**SPS** | SELECT
Portfolio
SERVICING, inc.

May 19, 2015

DAVID L GLASSEL
2119 OLD OX ROAD
SPRING, TX 77386

**PLEASE READ THIS NOTICE CAREFULLY. TAKE ACTION TO AVOID THE LOSS OF YOUR PROPERTY.**

### DEMAND LETTER – NOTICE OF DEFAULT
### NOTICIA DE OMISION

**RE:**     Loan Number ▓▓▓▓ secured by real property located at
2119 OLD OX ROAD
SPRING TX 77386

Dear Customer(s),

Select Portfolio Servicing, Inc. (SPS) is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that the mortgage loan related to the real property has been discharged in a Bankruptcy proceeding. Even though your personal liability on the note is discharged, the terms of the mortgage remain in effect. The owner of your mortgage, as lien holder, continues to have an enforceable lien on the real property. We are writing to you regarding account activity that may result in the lien holder exercising its rights under the mortgage. If the lien rights are enforced, you may lose your interest in the real property.

SPS is acting as the Mortgage Servicer for Deutsche Bank National Trust Company, as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2006-7, Asset-Backed Certificates, Series 2006-7, who is the owner of the Deed of Trust securing the lien on the real property. SPS, as Mortgage Servicer, is representing Deutsche Bank National Trust Company, as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2006-7, Asset-Backed Certificates, Series 2006-7, whose address is:

> Deutsche Bank National Trust Company, as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2006-7, Asset-Backed Certificates, Series 2006-7
> c/o Select Portfolio Servicing, Inc.
> 3815 South West Temple Salt Lake City, UT 84115

SPS is authorized to represent Deutsche Bank National Trust Company, as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2006-7, Asset-Backed Certificates, Series 2006-7, by virtue of a servicing agreement. Pursuant to the servicing agreement and Texas Property Code 51.0025, SPS is authorized to take payments on the account and to administer any resulting foreclosure of the property. All notices, payments, correspondence, and other communications regarding your mortgage should continue to be directed to SPS.

The mortgage on your property is in default because payments have not been made as required by the Deed of Trust or Mortgage (Security Instrument). We have previously sent you letters and communications regarding this default in an attempt to resolve this matter. This letter provides information about the default and what rights you have to cure the default. SPS has been instructed on behalf of the lien holder to pursue remedies under the Security Instrument unless action is taken to cure the default before the Cure Date shown below.



This letter provides notice of the following:

**The Default**
Payments have not been made under the Security Instrument as shown below.

**Action Required to Cure the Default**
To cure this default, you must pay the Amount Required to Cure together with payments which may subsequently become due, on or before the Cure Date listed below thirty (30) days from the date of this letter.

**Amount Required to Cure the Payment Default**
As of the date of this letter, the total amount due and required to cure the default on your loan is $79,180.11 (Amount Required to Cure) as itemized below:

| Itemization of Amount Required to Cure Cure Date: 06/18/2015 | | |
|---|---|---|
| Payment due for 10/01/2012 | $ | 78,231.11 |
| *Total amount due includes Escrow Payments (Taxes/Insurance) of $1,766.53* | | |
| Accrued Late Charges | | 0.00 |
| Advances made on Customer's behalf | | 949.00 |
| Escrow advance balance (Deficit) | | 0.00 |
| **Total Amount Outstanding** | $ | **79,180.11** |
| Unapplied balance | | 0.00 |
| **AMOUNT REQUIRED AS OF May 19, 2015 TO CURE THE DEFAULT** | $ | **79,180.11** |

If additional payments become due between the date of this letter and the Cure Date, those sums must be added to the Amount Required to Cure the Payment Default. You have thirty (30) days from the date of this notice to pay us the Amount Required to Cure. This Cure Date is 06/18/2015. In addition, there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances, that SPS paid on your behalf or advanced to your account. These amounts are not required to cure the payment default; however, these amounts are still owed. We are not waiving our right to demand payment of these amounts them at a later date, but payment of these additional amounts is not required to cure the payment default at this time.

**Possible Consequences of Default**
If we do not receive the Amount Required to Cure by the Cure Date listed above, or some loss mitigation alternative to foreclosure has not started, the lien holder will accelerate all payments required to satisfy the lien and require that all payments owing and sums secured by the Security Instrument be paid in full, and may take additional action up to and including referral for legal action. If that happens, you may lose your home. If a foreclosure sale is initiated, your property may be sold at foreclosure sale and you may be evicted from your home. You will be responsible to pay our expenses in pursuing these remedies, including without limitation, reasonable attorney fees to the extent permitted by law.

**Your Rights**
As provided in the Security Instrument you have the right to reinstate your account even after foreclosure has been initiated and prior to sale. This means that once you have met the conditions, the enforcement of the Security Instrument will be stopped and your Security Instrument will remain, as if demand for payment in full had not been made. You will have this right at any time before the earliest of; (a) five days before sale of the property under any power of sale granted by the Security Instrument; (b) another period as applicable law might specify for the termination of your right to have enforcement of the account stopped; or (c) a judgment has been entered enforcing your Security Instrument.

You have the right to bring a court action if you claim that the account is not in default or if you believe that you have any other defense to the foreclosure.

If you wish to dispute your delinquency or the correctness of the Amount Required to Cure the Default, you may do so by providing a written dispute to SPS at the following address:

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

You may call SPS at our toll free number (800) 258-8602 to discuss your dispute. However, to protect your rights under federal law, you will need to provide written notice to SPS if you believe that your dispute is unresolved.

If foreclosure has been initiated, SPS requires that you pay reinstatement amounts in certified funds. Certified funds include a bank wire, cashier's bank check, attorney trust account check, title or escrow company check, or Western Union Quick Collect. Please contact SPS at (800) 635-9698 for instructions on submitting these funds.

**Payment Options**
Please provide payments to the following address:

Sent via US Mail to:
**Select Portfolio Servicing, Inc.**
**PO Box 65450 Salt Lake City, UT 84165-0450**

Sent via overnight courier to:
**Select Portfolio Servicing, Inc.**
**Attn: Remittance Processing**
**3815 South West Temple Salt**
**Lake City, UT 84115**

Payments may be submitted in the following forms:
(a) Personal check (if foreclosure action has not been initiated)
(b) Money order
(c) Bank wire (electronic funds transfer). Please contact SPS for the information necessary to complete a bank wire.
(d) Certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency.
(e) Western Union Quick Collect. Reference the loan number above and deliver to Code City: Oswald, Code State: UT.

In some circumstances, you may be able to submit a payment through EZ Pay by calling (800) 258-8602 or visiting our website at **www.spservicing.com**. Please remember that EZ Pay payments clear quickly, and you must have the funds in your checking account on the day you ask us to process a payment. We will obtain your consent prior to initiating payment and will advise you of any fee for this service, which may be up to $15.00.

You may incur additional fees after the date of this letter pursuant to the terms of the Security Instrument. If foreclosure is initiated, additional amounts for attorney fees and costs may also be incurred. These sums can be significant and may be added to amounts secured by the mortgage. Payment of these additional amounts may not be required to cure the default, but may be required to bring your account current. To obtain the amount required to bring your account current, please contact SPS at our toll free number (800) 635-9698.

Our acceptance of one or more payments for less than the amount required to cure the default shall not be deemed to waive any rights under the Security Instrument.

**Additional Options Under the Servicemembers Civil Relief Act (SCRA)**
**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.** If you have questions regarding eligibility and application requirements, please call SPS at (800) 635-9698.



**You Have Options to Avoid Foreclosure!**
SPS is committed to home retention and offers many customer assistance programs designed to help customers avoid foreclosure. These programs are offered at no cost to our customers and may include special payment arrangements, structured repayment plans, or modifications. SPS is a participant in the federal government's Making Home Affordable Program (MHA), which is designed to help preserve home ownership or prevent foreclosure through modification, short sale, and deed-in-lieu options, if you are eligible. Even if you are not eligible for an MHA program, you may be eligible for an SPS resolution program, which could include an SPS modification or other settlement alternative.

If you would like to learn more about these programs, please contact our Primary Collections Department. Our toll-free number is (800) 635-9698 and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

**If we can reach an agreement to resolve your default, we will not proceed with and/or commence foreclosure, as long as you comply with the agreement and make required payments.**

**Counseling**
Home ownership counseling may be available to you by contacting a HUD-approved counseling agency. You may call (800) 569-4287 or TDD (800) 877-8339 for the housing counseling agency nearest you, or go to their website at: www.hud.gov. You may be eligible for assistance from the Homeownership Preservation Foundation which may be reached at (888) 995-HOPE (4673), or from another foreclosure avoidance agency.

**You have options to avoid foreclosure. THE TIME TO ACT IS NOW. Please call us at (800) 635-9698.**

Sincerely,

Select Portfolio Servicing, Inc.

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, hagala traducir. Nuestros representantes bilingues estan a su disposición para contestar cualquier pregunta llamando al teléfono 800-831-0118 y marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

# MACKIE WOLF ZIENTZ & MANN, P.C.

ATTORNEYS AT LAW
PHONE (214) 635-2650  FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900
14160 NORTH DALLAS PARKWAY
DALLAS, TEXAS 75254
* PLEASE RESPOND TO DALLAS OFFICE

UNION PLAZA
124 WEST CAPITOL, SUITE 1560
LITTLE ROCK, ARKANSAS 72201

13-000177-850
November 30, 2015
CERT MAIL
DAVID L. GLASSEL
2119 OLD OX ROAD
SPRING, TX 77386

RE:  LOAN NO. ████████
MWZM No. 13-000177-850

### NOTICE OF ACCELERATION OF LOAN MATURITY

Dear DAVID L. GLASSEL,

We have been retained by Select Portfolio Servicing, Inc., Mortgage Servicer for Deutsche Bank National Trust Company, as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2006-7, Asset-Backed Certificates, Series 2006-7, the current Mortgagee of the Note and Deed of Trust related to the above referenced loan. A servicing agreement between the Mortgagee, whose address is:

Deutsche Bank National Trust Company, as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2006-7, Asset-Backed Certificates, Series 2006-7
C/O Select Portfolio Servicing, Inc.
3815 SOUTH WEST TEMPLE
SALT LAKE CITY, UT 84115

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt. We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed of Trust.

A default occurred under the terms of the Note. Notification was sent that default had occurred in the payment of the Note and that SELECT PORTFOLIO SERVICING, INC. would accelerate the maturity of the Note if you did not cure the default. Because of your failure to cure the default, the maturity date of the Note was accelerated effective 11/30/2015.

All unpaid principal and accrued interest on the Note are due and payable at this time. According to the Mortgage Servicer's records, the total balance due as of the date of this notice is $271,053.89. As a result of accrued interest and other charges, the total balance due may be greater on the date of your payment and an adjustment may be required to fully pay off the loan. You may obtain the precise amount due by contacting this firm at **(214) 635-2650**. Payment must be made by cashier's check, certified check or money orders.

Federal law allows you to dispute the validity of the debt, or any portion thereof, within thirty days (30) after receipt of this notice. If you do not, the debt will be assumed valid by the firm. If you notify the firm in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed, the firm will obtain verification of the debt and will mail a copy of the verification to you. On your written request, within the thirty-day period for verification, the firm will provide you with the name and address of the original creditor. Additionally, all obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,

Mackie Wolf Zientz & Mann, P.C.





**SPS** | SELECT
*Portfolio*
SERVICING, *inc.*

January 30, 2018

RUSH RI
2119 OLD OX ROAD
SPRING, TX 77386

Customer Name:        DAVID GLASSEL
Account Number:       ▉▉▉▉▉▉▉
Property Address:     2119 OLD OX ROAD
                      SPRING, TX 77386

Dear Customer(s):

Select Portfolio Servicing, Inc. (SPS) the mortgage servicer on the above referenced account, is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that your obligation has either been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and any enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though your personal liability on the note may be discharged or subject to an automatic stay, the terms of the mortgage remain in effect and the owner of the mortgage, as lien holder, continues to have a lien on the real property.

You may voluntarily reinstate the account by paying the Total Reinstatement Amount, which has been calculated for you in the table below. The Total Reinstatement Amount expires at 5:00 pm Eastern Eastern Time on the Reinstatement Good to Date. After that date you must contact us for a new Reinstatement Quote.

Payment of the Total Reinstatement Amount must be made payable to "Select Portfolio Servicing, Inc." and remitted in the form of a Bank Wire, Western Union Quick Collect, a Cashier's check, a Certified check or other certified funds.

**Over Night Mailing Address**
Select Portfolio Servicing, Inc.
3217 S. Decker Lake Dr Salt Lake City, UT 84119

**Western Union Quick Collect**
Payable To: Select Portfolio Servicing, Inc.
Code City: Oswald    Code State: UT

| Account Number: | ▉▉▉▉▉ |
|---|---|
| **Reinstatement Quote** | |
| *Reinstatement Good To Date:* | March 1, 2018 |
| Amount of Past Due Payments: | $145,260.75 |
| Interest On Advances: | $38.52 |
| Payment to Accrue: | $6,699.20 |
| Expenses Paid by Servicer (Loan Level Advances): | $4,076.00 |
| ***Total Reinstatement Amount:*** | **$156,074.47** |



Issuance of this Reinstatement Quote does not constitute an agreement by SPS to suspend pending or future legal action or payment of: taxes, insurance, legal fees, legal costs, collection related expenses or any other miscellaneous expense. The Total Reinstatement Amount is the amount due as of the date of this letter and reflects attorney fees and costs which have been incurred up to the date of this letter and including the Good to Date. If any event should occur that increases the Total Reinstatement Amount, SPS reserves the right to assess these amounts against your account. SPS may not require such increases to the Total Reinstatement Amount to be paid to reinstate the account. However, if they are not required to reinstate your account, they will be required to bring your account current. SPS reserves the right to collect these post reinstatement amounts at any point in the future.

If you are unable to pay the Total Reinstatement Amount on or before the "Good to Date" then you must contact SPS for an updated Reinstatement Quote prior to remitting your payment. **Figures quoted above are subject to final verification by the Note Holder. SPS reserves the right to either reject or apply funds received after the expiration of this Reinstatement Quote, and, if insufficient to fully reinstate, SPS may elect to apply the funds to your account.** It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that SPS paid on your behalf or advanced to your account.

If you are experiencing financial hardship, there may be options available to assist you.  Please contact our Loan Resolution Department at 888-818-6032 to explore these options in further detail.  We look forward to speaking with you.

If you have any questions regarding this reinstatement quote please contact our office. Our toll-free number is 888-818-6032, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición  para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**



**Certified Funds Remittance**

Certified funds must be sent in the form of a bank wire, cashier's bank check, attorney trust account check, title or escrow company check, or Western Union Quick Collect.

**Wire Instructions**

All wires must reference the customer's account number, customer name, and property street address. Without these references, application of the funds may be delayed.  Use these wire instructions **only** for **mortgage payments, reinstatements, or payoffs**.   Please email any special instructions to WireDetail@spservicing.com, or you can fax details or instructions to 801-270-7838.

| | |
|---|---|
| Account Name | Select Portfolio Servicing, Inc.<br>Wire Retaining |
| Account Number | 900900308 |
| Bank: | JP Morgan Chase |
| Routing/ABA# | 021000021 |
| SWIFT Code | CHASUS33 (for international wire use only) |
| Customer Account Number | ▆▆▆▆▆▆▆ |
| Customer Name(s): | DAVID GLASSEL |
| Property Street Address | 2119 OLD OX ROAD<br>SPRING, TX 77386 |

**Overnight Mailing Address**

Select Portfolio Servicing, Inc.
**Attn:** Remittance Processing
3217 S. Decker Lake Dr Salt Lake City, UT 84119
Please write the SPS account number on all funds and correspondence.

**Western Union Quick Collect**

To find the Western Union location nearest you, visit www.westernunion.com or call 800-325-6000.

Reference the account number and deliver to Code City:  Oswald; Code State:  UT.



**PAYOFF STATEMENT**
Date: January 30, 2018
Requested By:

**SPS**
(801) 269-4276
MARGARITA TERRY

Account Number: ██████████
Payment Due Date: October 01, 2012

**This Statement expires on:**
**March 01, 2018**

Customer Name/Property Address:
DAVID L GLASSEL

2119 OLD OX ROAD
SPRING, TX 77386

### THE FOLLOWING AMOUNTS ARE SUBJECT TO FINAL VERIFICATION BASED ON THE RECEIPT OF FUNDS

**ITEMIZATION**

| | | |
|---|---|---:|
| Unpaid Principal Balance | $ | 191,429.65 |
| Interest Calculated to March 01, 2018 | $ | 86,742.56 |
| Escrow/Impound Advance Balance | $ | 43,178.16 |
| Loan Level Advance Balance | $ | 4,076.00 |
| Interest on Advances | $ | 38.52 |
| **Total Amounts Due Under your Note and Mortgage** | **$** | **325,464.89** |
| Per Diem (Daily Interest) | $ | 40.92 |
| **TOTAL AMOUNT DUE** | **$** | **325,464.89** |

XP111



 **SELECT** *Portfolio* **SERVICING,** *inc.*

**IMPORTANT INFORMATION REGARDING THE ACCOUNT PAYOFF:**

1) **Clearance of Funds:** The Payoff Statement assumes that payments made on your account have cleared your financial institution. If a payment you made is returned, you are still responsible to pay that amount, even though we accept the amount of your payoff. Payments received within thirty (30) days of the payoff application are subject to clearance by your financial institution.

2) **Final Verification:** The amounts set forth in this Payoff Statement are subject to final verification.

3) **Expiration:** This Payoff Statement expires and is void after March 01, 2018. You must obtain an updated WRITTEN statement from us if you want to pay off your account after the expiration date. Please allow up to five (5) business days for us to provide you with an updated Payoff Statement (unless state law requires a shorter timeframe).

4) **Prepayment Penalty:** If your mortgage documents indicate a prepayment fee on your account, it is included as part of the total amounts due for payoff. If the prepayment fee should be waived, supporting documentation (final HUD1, grant deed, warranty deed, prepayment rider) must be faxed to (801) 269-4269 prior to the receipt of your payoff funds. Upon receipt, the documents will be reviewed for final determination of waiving the prepayment fee. If you have any questions about the prepayment fee, please contact us at (800) 258-8602.

5) **Foreclosure / Bankruptcy:** If the account is currently subject to a pending foreclosure or bankruptcy action, the attorney fees and costs for services rendered that have been incurred with respect to this pending action have been included in the outstanding amounts due. Legal actions may continue after the date of this letter, and if so, will result in additional attorney fees and costs. An estimate of those amounts to be incurred between the date of this quote and the good through date are included. In the event that upon completion of the related legal work the actual legal fees and costs charged by the attorney to SPS are less than the estimates provided by the attorney in this quote, SPS will apply such overage to any other amounts due and owing. If there are no amounts due, SPS will refund such overage directly to the customer.

6) **Non-Sufficient Funds:** If the amounts received are not sufficient to pay the account in full, we will return the payoff funds in the same manner as they were remitted. Interest will continue to accrue at the daily (per diem) amount shown on the Payoff Statement and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid non-sufficient funds, please confirm the actual payoff amount by calling (800) 258-8602. A satisfaction/release of mortgage will not be recorded until all amounts due under your mortgage documents are received, unless applicable law requires otherwise.

7) **Scheduled Payments:** Do not cancel or stop payment on any of your regularly scheduled monthly payments. **Issuance of this Payoff Statement does not suspend your obligation to make your**

XP111



**monthly payments under your mortgage documents.** You must continue to make your monthly payments, when due, up until the time your account is paid in full. If the last regular monthly payment you sent to us is returned for insufficient funds, is dishonored due to a stop payment order, or payment is not made for any other reason, the amount required to payoff your account may be higher than shown in this Payoff Statement.

8) **Remittance of Funds:** Payoff amounts must be remitted in U.S. Dollars by money wire, certified or cashier's check, title company check or an attorney's trustee check. No personal or unofficial checks will be accepted. A copy of the Payoff Statement must accompany your payoff check. No deliveries should be made on Saturday, Sunday or legal holidays. Payoff funds received after 12 p.m. Noon Eastern Time will be processed the following business day.

**PLEASE REMIT FUNDS TO THE FOLLOWING:**

| Wiring Instructions | Mailing Instructions |
|---|---|
| Select Portfolio Servicing, Inc. Salt Lake City, Utah Attn: PAYOFF DEPARTMENT Routing/ABA # 021000021 Account # 900900308 Wire Retaining For Credit to: 0014701007 Name: DAVID GLASSEL | Select Portfolio Servicing, Inc. Attn: PAYOFF DEPARTMENT PO BOX 65450 Salt Lake City, UT 84165  Overnight Address: 3217 S. Decker Lake Dr. Salt Lake City, UT 84119 |

9) **Regularly Scheduled Payments:** If you fail to make your regularly scheduled monthly mortgage payments within the timeframe stated on your monthly statement, the late charge disclosed on your monthly statement will be added to the payoff total. If your monthly payment is received, but is returned unpaid by your bank, a fee will be added to the payoff total to the extent permitted by applicable law.

10) **Automated Payments:** If your monthly payments are automatically deducted from your banking account, these payments will continue to be withdrawn until the account is paid in full, or unless we receive verbal or written cancellation instructions in our office no later than fifteen (15) days prior to the payment due date.

11) **Escrow Account:** If you have an escrow account with us, issuance of this Payoff Statement does not alter our responsibility to pay taxes and insurance from the escrow account. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. Select Portfolio Servicing, Inc. is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of escrow funds. If funds have accumulated in the escrow account, and if we have been required to pay interest on such funds as provided by state law, interest will be paid to the date the escrow closes. Any deficiencies in the escrow account will be collected at payoff. Any excess funds in the escrow account will be refunded within twenty (20) business days after the payoff is completed. If lender placed insurance has been charged to the escrow account

XP111



prior to payoff, the full amount will be required to pay off the account. If appropriate evidence of insurance is received, the applicable refund will be issued to the mortgagor of record within four to six weeks. Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

12) **Forwarding Address:** Please provide the proper forwarding address to ensure receipt of applicable escrow refunds, cancelled documents, and annual tax/interest statements. If a forwarding address is not provided, all correspondence will be mailed to the customer's last known address.

13) **Release/Satisfaction of Mortgage:** Upon receipt of the timely payment of the total amount due, SPS will prepare and send for recording a lien release in full satisfaction of the mortgage on the above referenced property in accordance with timelines established by state law.

14) **Questions?** If you have any questions, please contact our Customer Service Department. Our toll-free number is (800) 258-8602, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero (800) 831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**