# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **DAVID L. GLASSEL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:17-cv-553** |
| | § | |
| **OCWEN LOAN SERVICING, LLC,** *et al,* | § | |
| | § | |
| **Defendants.** | § | |

## DECLARATION OF ___Michelle McLean___

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following statements are true and correct:

1.      My name is ___Michelle McLean___. I am over the age of 18 years, have never been convicted of a crime, and am fully competent to make this declaration. I have personal knowledge of all the facts stated herein, and all statements of fact contained herein are true and correct.

2.      I hold a position as a ___Contract Management Coordinator___ at Ocwen Loan Servicing, LLC ("Ocwen"). In the regular performance of my job functions at Ocwen, I am familiar with the business records maintained by Ocwen for the purpose of servicing mortgage loans, collecting payments and pursuing any delinquencies (the "Servicing Records"). The Servicing Records typically include electronic data compilations and imaged documents pertaining to the loans it services. Based on my training and general knowledge of the processes by which they are created and maintained, the Servicing Records were made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and

are kept in the ordinary course of the business activity regularly conducted by Ocwen. It is the regular practice of Ocwen to make and update its Servicing Records.

3.      I am familiar with the attached records and am authorized to make this declaration. The facts stated within this declaration are based on personal knowledge obtained from my review of the records and documents of Ocwen pertaining to the loan of David L. Glassel ("the Borrower"), including the records attached as exhibits to this Declaration.

4.      On or about August 22, 2006, the Borrower executed a Note (the "Note") for $168,000.00 payable to GreenPoint Mortgage Funding, Inc. ("Greenpoint"). (Exhibit A-1.) Concurrently with the Borrower's execution of the Note, he executed a Deed of Trust (the "Deed of Trust" and together with the Note, the "Loan" or the "Loan Agreement") securing the repayment of the Note with the real property commonly known as 2123 Old Ox Road, Spring, Texas 77386, and more particular described as:

> LOT SIXTY-FOUR (64), IN BLOCK THREE (3) OF SPRING FOREST, SECTION ONE (1), AN ADDITION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF , RECORDED IN VOLUME 7, PAGE 379, OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

(the "Property"). (Exhibit A-2.)   The Deed of Trust was recorded as Instrument No. 2006-099885 in the real property records for Montgomery County, Texas on or about August 25, 2006. (*Id.*)

5.      In the Deed of Trust, GreenPoint was identified as the Lender. (*Id.* at p.1.) Mortgage Electronic Registration Systems, Inc. ("MERS") was identified in the Deed of Trust as beneficiary and nominee for the Lender and its successors and assigns. (*Id.*)   GreenPoint

indorsed the original Note in blank and transferred possession of it to DEUTSCHE BANK NATIONAL

TRUST COMPANY, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2006-18, ASSET-BACKED CERTIFICATES SERIES 2006-18. (Exs. A, A-1.)  Ocwen is currently in possession of the Note on behalf of DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2006-18, ASSET-BACKED CERTIFICATES SERIES 2006-18.

6.       Mortgage Electronic Registration Systems, Inc., solely as nominee for GreenPoint Mortgage Funding, Inc. its successors and assigns, assigned the Deed of Trust to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF THE GSAA HOME EQUITY TRUST 2006-18, ASSET-BACKED CERTIFICATES SERIES 2006-18 ("Deutsche Bank"), as reflected in that certain Assignment of Deed of Trust dated December 19, 2012 and recorded in the real property records of Montgomery County, Texas as Instrument No. 2012125066 on or about December 26, 2012.  (Exhibit A-3.)  Deutsche Bank is the current owner of the Note and beneficiary of the Deed of Trust.  Ocwen is currently the servicer for Deutsche Bank with respect to the Loan.

7.       The Borrower has not tendered all payments on the Note when due.  Deutsche Bank through its mortgage servicer, Ocwen, on November 9, 2015 sent via United States certified mail to the Borrower at the Property address, 2123 Old Ox Road, Spring, Texas 77386, a Notice of Default with Intent to Accelerate. (Exhibit A-4.) In this Notice of Default, the Borrower was advised that the loan was in default and that he needed to tender $67,306.58  by December 9, 2015 to become current on the Loan. *Id.*  The Borrower was also informed in this

Notice of Default that his failure to timely bring the loan current would result in an acceleration of the debt. *Id.* No

payments were made to Ocwen to cure the default or reinstate the loan after the Notice of Default was sent, and the loan remains in default.

8.      Deutsche Bank through its mortgage servicer, Ocwen, on November 9, 2015 also sent via United States certified mail to the Borrower at 2119 Old Ox Road, Spring, Texas 77386 a Notice of Default with Intent to Accelerate. (Exhibit A-5.) In this Notice of Default, the Borrower was advised that the loan was in default and that he needed to tender $67,306.58 by December 9, 2015 to become current on the Loan. *Id.* The Borrower was also informed in this Notice of Default that his failure to timely bring the loan current would result in an acceleration of the debt. *Id.* No payments were made to Ocwen to cure the default or reinstate the loan after the Notice of Default was sent, and the loan remains in default.

9.      Attached hereto are Exhibits A-1 through A-6 of records from Ocwen. These records are kept by Ocwen in the regular course of business, and it is the regular course of business of Ocwen for an employee or representative of Ocwen, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original. These records are also identified as exhibits to this declaration and are indicated below:

        A-1.   Copy of Original Note, dated August 22, 2006;

        A-2.   Deed of Trust, dated August 22, 2006;

A-3.   Corporate Assignment of Deed of Trust dated December 19, 2012 and recorded in the real property records of Montgomery County, Texas as document no. 2012125066;

A-4.   Notice of Default with Intent to Accelerate dated November 9, 2015 and sent to the Borrower at 2123 Old Ox by certified regular mail;

A-5.   Notice of Default with Intent to Accelerate dated November 9, 2015 and sent to the Borrower at 2119 Old Ox by certified regular mail; and

A-6.   Loan Application for the Loan Agreement.

FURTHER DECLARANT SAYETH NOT."

Signed this ___6___ day of ___April___, 2018.

*Michelle McLean   4.6.2018*

Ocwen Loan Servicing, LLC as servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2006-18, ASSET-BACKED CERTIFICATES SERIES 2006-18

Printed Name: ___Michelle McLean___

Contract Management Coordinator

# EXHIBIT A-1

# NOTE

August 22, 2006                    Kingwood                         Texas
    [Date]                            [City]                            [State]

2123 Old Ox Road, Spring, TX  77386

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $168,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GreenPoint Mortgage Funding, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st          day of each month beginning on October 1, 2006          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2036          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 79363, City of Industry, CA 91716-9363
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,262.13          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6N (0207).01          Form 3200 1/01
    VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3



610          N   001   001

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15             calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be             5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
David L. Glassel                   -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                        -Borrower

*[Sign Original Only]*

WITHOUT RECOURSE
PAY TO THE ORDER OF:

GreenPoint Mortgage Funding, Inc.

Thomas K. Mitchell
Vice President

# PREPAYMENT FEE ALLONGE

Loan Number: ███████

This Prepayment Fee Allonge ("Allonge") is made this 22nd day of August, 2006, and is incorporated into and intended to form a part of the note dated the same date as this Allonge (Note) and also amends and supplements the mortgage, deed of trust, security deed, or security instrument (the "Security Instrument") dated the same date as this Allonge and the Note. To the extent that the provisions of this Allonge are inconsistent with the provisions of the Note and/or the Security Instrument, the provisions of this Allonge shall prevail over and will supercede any inconsistent provisions of the Note and/or the Security Instrument.

The section of the Note entitled **Borrower's Right to Prepay** is amended by adding the following paragraph as the last paragraph of such section:

> If I make a Prepayment within 1 year of the date of this Note, I will pay a Prepayment fee on the aggregate Prepayments made within any consecutive twelve month period which exceed 20% of the original Principal amount stated in the Note. The Prepayment fee I will pay shall be an amount equal to six (6) months advance interest on the amount of the Prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the Prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. The interest rate used to calculate the Prepayment fee will be the interest rate in effect at the time of the Prepayment. I will not be obligated to pay a Prepayment fee if I make a full Prepayment at any time after the 1st Year anniversary after I execute this Note, and in no event will such a charge be made if it violates state or federal law.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Borrower)          _____ (Borrower)
David L. Glassel

_____ (Borrower)          _____ (Borrower)

_____ (Borrower)          _____ (Borrower)

_____ (Borrower)          _____ (Borrower)

*[Sign Original Only]*

Prepayment Fee Allonge - (Standard-Multistate)
GreenPoint Mortgage Funding, Inc.                Page 1 of 1                    H25000MU 07/06

# EXHIBIT A-2

2006-099885

**CHICAGO TITLE**
GF_435910-DB/KW

1770-11-161

Return To:
GreenPoint Mortgage Funding,
Inc.
981 Airway Court, Suite E
Santa Rosa, CA 95403-2049

Chicago Title Insurance Company
1110 Kingwood Drive, Suite 103
Kingwood, Texas 77339

Prepared By:
McGlinchey Stafford and
Youngblood & Bendalin, LLP
2711 N. Haskell Avenue,
Dallas, TX 75204

─────────────────[Space Above This Line For Recording Data]─────────────────

# DEED OF TRUST
MIN ▬▬▬▬▬▬

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated **August 22, 2006**
together with all Riders to this document.
**(B) "Borrower"** is **David L. Glassel, An Unmarried Man**

Borrower is the grantor under this Security Instrument.
**(C) "Lender"** is **GreenPoint Mortgage Funding, Inc.**

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3044  1/01

⬤-4A(TX) (0508) 01
Page 1 of 16
    VMP Mortgage Solutions, Inc.



610 ▬▬▬    D2  001  001

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

Lender is a **Corporation**
organized and existing under the laws of **the State of New York**
Lender's address is **100 Wood Hollow Drive, Novato, CA 94945**

Lender includes any holder of the Note who is entitled to receive payments under the Note.
**(D) "Trustee"** is **G. Tommy Bastian**

. Trustee's address is

**15000 Surveyor Blvd., Suite 100, Addison, Texas 75001**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is a beneficiary under
this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated **August 22, 2006**
The Note states that Borrower owes Lender **one hundred sixty-eight thousand and 00/100**
Dollars
(U.S. $**168,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **September 1, 2036** .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |
| ☐ Occupancy Rider | ☐ Interim Interest Rider | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

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

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
     **County**     of      **Montgomery**    :
    [Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]

**Lot Sixty-four (64), in Block Three (3) of Spring Forest, Section One (1), an addition in Montgomery County, Texas, according to the map or plat thereof , recorded in Volume 7, Page 379, of the Map Records of Montgomery County, Texas.**

Parcel ID Number: 89850106500       which currently has the address of
**2123 Old Ox Road**                   [Street]
**Spring**               [City], Texas **77386**    [Zip Code]
("Property Address"):

  TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this ███

 **-6A(TX)** (0506).01       Page 3 of 16       Form 3044   1/01

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

Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

161·11·0775

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

161·11·0776

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any

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

interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

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

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

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

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11.  Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



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

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually

161·11·0781

received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan

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

servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

161·11·0783

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Lender authorizes Trustee to sell the property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

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

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☐ **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☒ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the



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

Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
David L. Glassel                          -Borrower

_____

_____ (Seal)        _____ (Seal)
                            -Borrower                                    -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                                    -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                                    -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                                    -Borrower

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

**STATE OF TEXAS**
County of Harris

Before me a notary public, Lecia Prince on this day personally appeared
David L. Glassel

known to me (or proved to me on the oath of
or through Picture id ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this 22 day of August, 2006.

(Seal)



LECIA PRINCE
MY COMMISSION EXPIRES
December 19, 2006

Notary Public

My Commission Expires: 12-19-06



-6A(TX) (0508).01                    Page 18 of 18                    Form 3044   1/01

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

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **22nd**       day of **August, 2006**                ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to **GreenPoint Mortgage
Funding, Inc.**

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at: **2123 Old Ox Road, Spring, TX  77386**

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01
⬤-57R (0411)
Page 1 of 3
VMP Mortgage Solutions, Inc.
(800)521-7291

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

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.





161·11·0789

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
David L. Glassel          -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower


RECORDER'S MEMORANDUM:                     _____ (Seal)          _____ (Seal)
At the time of recordation, this instrument was                  -Borrower                                  -Borrower
found to be inadequate for the best photogra-
phic reproduction because of illegibility, carbon
or photo copy, discolored paper, etc. All black-
outs, additions and changes were present at the
time the instrument was filed and recorded.

VMP-57R (0411)                    Page 3 of 3                    Form 3170 1/01


FILED FOR RECORD

06 AUG 25  PM 2: 59

*Mark Turnball*
COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF MONTGOMERY
I hereby certify this instrument was filed in
File Number Sequence on the date and at the time
stamped herein by me and was duly RECORDED in
the Official Public Records of Real Property at
Montgomery County, Texas.

AUG 2 5 2006

*Mark Turnball*
County Clerk
Montgomery County, Texas



# EXHIBIT A-3

Doc# 2012125066
Pages 3

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

DocID# 6372221433520403

Property Address:
2123 Old Ox Rd
Spring, TX 77386-2112
TX086-ADT 20617483  E 12/13/2012  BK01

| Recording Requested By: | When recorded mail to: |
|---|---|
| **Bank of America** | **CoreLogic** |
| Prepared By: | **Mail Stop: ASGN** |
| **Diana De Avila** | **1 CoreLogic Drive** |
| **800-444-4302** | **Westlake, TX 76262-9823** |
| **1800 Tapo Canyon Road** | |
| **Simi Valley, CA 93063** | |

MIN #                                   MERS Phone #:  888-679-6377

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.** its successors and assigns (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 hereby assign and transfer to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF THE GSAA HOME EQUITY TRUST 2006-18 ASSET-BACKED CERTIFICATES SERIES 2006-18** its successors and assigns whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all its right, title, and interest to a certain Deed of Trust described below.

| | |
|---|---|
| Original Lender: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.** |
| Borrower(s): | **DAVID L. GLASSEL, AN UNMARRIED MAN** |
| Original Trustee: | **G. TOMMY BASTIAN** |
| Date of Deed of Trust: | **8/22/2006** |
| Original Loan Amount: | **$168,000.00** |

Recorded in Montgomery County, T X on: 8/25/2006, book 161-11, page 0771 and instrument number 2006-099885

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on ~~DEC 13 2012~~

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS"), AS NOMINEE FOR
GREENPOINT MORTGAGE FUNDING, INC.

By: _____
Fidelia   Wallace   Assistant Secretary

610                    8  001  003

State of California
County of Ventura

On ___DEC 19 2012___ before me, ___Danya Bucaro___, Notary Public, personally appeared ___Talisha Wallace___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: ___Danya Bucaro___        (Seal)
My Commission Expires: ___March 15, 2014___

DANYA BUCARO
Commission # 1896306
Notary Public - California
Los Angeles County
My Comm. Expires Mar 15, 2014

DocID#        6372221433520403

E-FILED FOR RECORD
12/26/2012  8:17AM

**Doc# 2012125066**
**Pages 3**

*Mark Turnbull*

COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF MONTGOMERY
I hereby certify this instrument was e-FILED in
file number sequence on the date and at the time
stamped herein by me and was duly e-RECORDED in
the Official Public Records of Montgomery County, Texas.

12/26/2012

*Mark Turnbull*

County Clerk
Montgomery County, Texas

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

DocID# 6372221433520403

Property Address:
2123 Old Ox Rd
Spring, TX 77386-2112
TX0M-ADT 20617483  E  12/15/2012  BK01

| Recording Requested By: | When recorded mail to: |
|---|---|
| **Bank of America** | **CoreLogic** |
| Prepared By: | Mail Stop: ASGN |
| **Diana De Avila** | **1 CoreLogic Drive** |
| **800-444-4302** | **Westlake, TX 76262-9823** |
| **1800 Tapo Canyon Road** | |
| **Simi Valley, CA 93063** | |

MIN #: ▮▮▮▮▮▮            MERS Phone #:  888-679-6377

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.** its successors and assigns (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 hereby assign and transfer to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF THE GSAA HOME EQUITY TRUST 2006-18 ASSET-BACKED CERTIFICATES SERIES 2006-18** its successors and assigns whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all its right, title, and interest to a certain Deed of Trust described below.

| | |
|---|---|
| Original Lender: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.** |
| Borrower(s): | **DAVID L. GLASSEL, AN UNMARRIED MAN** |
| Original Trustee: | **G. TOMMY BASTIAN** |
| Date of Deed of Trust: | **8/22/2006** |
| Original Loan Amount: | **$168,000.00** |

Recorded in Montgomery County, T X on: 8/25/2006, book 161-11, page 0771 and instrument number 2006-099885

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
~~DEC 13 2012~~

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS"), AS NOMINEE FOR
GREENPOINT MORTGAGE FUNDING, INC.

By: _____

Felisha    Wallace Assistant Secretary

State of California
County of Ventura

On __DEC 19 2012__ before me, _____ *Danya Bucaro* _____, Notary Public, personally
appeared _____ **Talisha Wallace** _____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____ *Danya Bucaro* _____          (Seal)
My Commission Expires: *March 15, 2014*

DANYA BUCARO
Commission # 1880386
Notary Public - California
Los Angeles County
My Comm. Expires Mar 15, 2014

DocID#    6372221433520403

# EXHIBIT A-4

Ocwen
P.O. BOX 9066
TEMECULA, CA 92589-9066



9314 8100 1170 0838 4959 34

**RETURN RECEIPT (ELECTRONIC)**

Send Payments to:
Ocwen
P.O. Box 6440
Carol Stream, IL  60197-6440

20151109-209

Send Correspondence to:
Ocwen
P.O. Box 24738
West Palm Beach, FL  33416-4738

David L Glassel
2123 OLD OX RD
SPRING, TX 77386-2112

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO



DEMANDTX



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

11/09/2015

Sent Via Certified Mail
9314 8100 1170 0838 4959 34
Loan Number: ███████

David L Glassel
2123 OLD OX RD
SPRING, TX 77386-2112

Property Address: 2123 Old Ox Rd
Spring, TX 77386-2112

## NOTICE OF DEFAULT

Dear Customer(s),

### AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA:

Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

### SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received a Chapter 7 discharge under the Bankruptcy Code of the United States or if your mortgage is the type which has been discharged pursuant to a completed Chapter 13 plan, this notice is not intended and does not constitute an attempt to collect a debt against you personally. If the foregoing applies to you, this notice is sent to you only as a preliminary step to a foreclosure on the mortgage against the above-referenced property. Provisions may be contained within your mortgage/deed of trust that require notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt.

In addition, if you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because OCWEN has not been notified of your bankruptcy case. If the foregoing applies to you, it is IMPORTANT that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

If you have not recently filed bankruptcy or received a bankruptcy discharge, you are hereby notified that this letter is an attempt to collect a debt. All information obtained will be used for that purpose. The debt is owed to OCWEN as the owner or servicer of your home loan and mortgage.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this letter, the debt will be assumed to be valid by OCWEN. If you notify OCWEN in writing within the thirty (30) days that the debt or a portion of the debt is disputed, OCWEN will send you verification of the debt. Verification of the debt or a portion thereof may be requested in writing from the Performing Loan Department within thirty (30) days as specified above. The failure to dispute the validity of the debt may not be construed by any court as an admission of liability by you.

Your mortgage payments are past due, which puts you in default of your loan agreement. As of 11/09/2015, you owe the following:

NMLS # 1852
DEMANDTXM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*





**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

| | |
|---|---|
| Principal and Interest | $47,960.94 |
| Interest Arrearage | $0.00 |
| Escrow | $17,893.42 |
| Late Charges | $126.22 |
| Insufficient Funds Charges | $0.00 |
| Fees/Expenses | $1,326.00 |
| Suspense Balance (CREDIT) | $0.00 |
| Interest Reserve Balance (CREDIT) | $0.00 |
| **TOTAL DUE** | **$67,306.58** |

On or before 12/16/2015, you must submit payment by Money Gram, Bank Check, Money Order or Certified Funds for the entire total due amount stated above to the appropriate address listed at the bottom of page two of this notice. Any payment(s) that come due in the interim must also be included.

Failure to bring your account current will result in our election to exercise our right to foreclose on your property. Upon acceleration, your total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect your total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. If your loan has already been accelerated and foreclosure proceedings already begun, we will continue the foreclosure action if possible. You have the right to assert in court the non-existence of a default or any other defense to acceleration and foreclosure.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

OCWEN will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. However, we will only release non-public information once your written authorization has been obtained, as required by law.

After acceleration of the debt, but prior to foreclosure, you may have the right to reinstate the mortgage loan, depending on the terms of the note and mortgage. We encourage you to review the provisions of the note and mortgage. Please be aware that, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by OCWEN to enforce the mortgage in addition to the overdue amount on the mortgage. Any payment to reinstate the mortgage loan after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the mortgage loan will be returned and will not stop any foreclosure proceedings that have begun. PRIOR TO SUBMITTING PAYMENT, YOU MAY WISH TO CALL US TO VERIFY THE EXACT AMOUNT DUE.

A HUD counseling agency may be able to provide you with assistance. To locate the HUD approved counseling agency in your area, call the HUD Housing Counseling Service at (800) 569-4287 or consult HUD's website at www.HUD.gov.

If you are unable to bring your account current, we urge you to call us immediately to discuss possible alternatives to foreclosure.

**If you have the desire to remedy this situation we want to assist you in trying to reach that goal. OCWEN would like to present you with some of the alternatives that might be available regarding your delinquent mortgage loan. While our primary objective is the collection of past due amounts on your loan, we want to work with you to find the best available alternative for you to bring your mortgage loan obligation current.**

NMLS # 1852                                                                                         DEMANDTXM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 2 of 5



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

Elizabeth Muchibi has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,
Ocwen Loan Servicing, LLC
Toll Free Phone: (800) 746-2936

**ADDRESS WRITTEN CORRESPONDENCE TO:**
Research Department
Ocwen Loan Servicing, LLC
P.O. Box 24736
West Palm Beach, FL 33416-4736

## PAYMENT REMITTANCE INFORMATION
### (Always include Loan # ███████ with your payment)

**Money Gram**
Receive Code: 2355
Payable To: Ocwen Loan Servicing, LLC
City: Orlando
St: FL
Agent Locater: 800-926-9400
Loan # ███████

**Western Union**
BY WUQC
Code City: Ocwen
State: FL
Reference: Loan # ███████

**Overnight Address**
Ocwen Loan Servicing, LLC
2012 Corporate Lane, Suite 108
Naperville, IL 60563-0726
Attention: Cashiering Department

**VIA Regular Mail**
Ocwen Loan Servicing, LLC
P.O. Box 6440
Carol Stream, IL 60197-6440

NMLS # 1852                                                                                      DEMANDTXM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 3 of 5



# EXHIBIT A-5

Ocwen
P.O. BOX 9066
TEMECULA, CA 92589-9066



9314 8100 1170 0838 4958 28

**RETURN RECEIPT (ELECTRONIC)**

20151109-209

Send Payments to:
Ocwen
P.O. Box 6440
Carol Stream, IL   60197-6440

Send Correspondence to:
Ocwen
P.O. Box 24738
West Palm Beach, FL   33416-4738

David L Glassel
2119 OLD OX RD
SPRING, TX 77386-2112

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO



DEMANDTX



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

11/09/2015

Sent Via Certified Mail
9314 8100 1170 0838 4958 28
Loan Number: ▮▮▮▮▮▮

David L Glassel
2119 OLD OX RD
SPRING, TX 77386-2112

Property Address: 2123 Old Ox Rd
Spring, TX 77386-2112

## NOTICE OF DEFAULT

Dear Customer(s),

### AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA:

Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

### SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received a Chapter 7 discharge under the Bankruptcy Code of the United States or if your mortgage is the type which has been discharged pursuant to a completed Chapter 13 plan, this notice is not intended and does not constitute an attempt to collect a debt against you personally. If the foregoing applies to you, this notice is sent to you only as a preliminary step to a foreclosure on the mortgage against the above-referenced property. Provisions may be contained within your mortgage/deed of trust that require notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt.

In addition, if you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because OCWEN has not been notified of your bankruptcy case. If the foregoing applies to you, it is IMPORTANT that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

If you have not recently filed bankruptcy or received a bankruptcy discharge, you are hereby notified that this letter is an attempt to collect a debt. All information obtained will be used for that purpose. The debt is owed to OCWEN as the owner or servicer of your home loan and mortgage.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this letter, the debt will be assumed to be valid by OCWEN. If you notify OCWEN in writing within the thirty (30) days that the debt or a portion of the debt is disputed, OCWEN will send you verification of the debt. Verification of the debt or a portion thereof may be requested in writing from the Performing Loan Department within thirty (30) days as specified above. The failure to dispute the validity of the debt may not be construed by any court as an admission of liability by you.

Your mortgage payments are past due, which puts you in default of your loan agreement. As of 11/09/2015, you owe the following:

---

NMLS # 1852                                                                                                     DEMANDTXM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*





**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

| Principal and Interest | $47,960.94 |
|---|---|
| Interest Arrearage | $0.00 |
| Escrow | $17,893.42 |
| Late Charges | $126.22 |
| Insufficient Funds Charges | $0.00 |
| Fees/Expenses | $1,326.00 |
| Suspense Balance (CREDIT) | $0.00 |
| Interest Reserve Balance (CREDIT) | $0.00 |
| TOTAL DUE | **$67,306.58** |

On or before 12/16/2015, you must submit payment by Money Gram, Bank Check, Money Order or Certified Funds for the entire total due amount stated above to the appropriate address listed at the bottom of page two of this notice. Any payment(s) that come due in the interim must also be included.

Failure to bring your account current will result in our election to exercise our right to foreclose on your property. Upon acceleration, your total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect your total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. If your loan has already been accelerated and foreclosure proceedings already begun, we will continue the foreclosure action if possible. You have the right to assert in court the non-existence of a default or any other defense to acceleration and foreclosure.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

OCWEN will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. However, we will only release non-public information once your written authorization has been obtained, as required by law.

After acceleration of the debt, but prior to foreclosure, you may have the right to reinstate the mortgage loan, depending on the terms of the note and mortgage. We encourage you to review the provisions of the note and mortgage. Please be aware that, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by OCWEN to enforce the mortgage in addition to the overdue amount on the mortgage. Any payment to reinstate the mortgage loan after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the mortgage loan will be returned and will not stop any foreclosure proceedings that have begun. PRIOR TO SUBMITTING PAYMENT, YOU MAY WISH TO CALL US TO VERIFY THE EXACT AMOUNT DUE.

A HUD counseling agency may be able to provide you with assistance. To locate the HUD approved counseling agency in your area, call the HUD Housing Counseling Service at (800) 569-4287 or consult HUD's website at www.HUD.gov.

If you are unable to bring your account current, we urge you to call us immediately to discuss possible alternatives to foreclosure.

**If you have the desire to remedy this situation we want to assist you in trying to reach that goal. OCWEN would like to present you with some of the alternatives that might be available regarding your delinquent mortgage loan. While our primary objective is the collection of past due amounts on your loan, we want to work with you to find the best available alternative for you to bring your mortgage loan obligation current.**

NMLS # 1852                                                                                                     DEMANDTXM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL  33409
Toll Free: (800) 746 - 2936

---

Elizabeth Muchibi has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,
Ocwen Loan Servicing, LLC
Toll Free Phone: (800) 746-2936

**ADDRESS WRITTEN CORRESPONDENCE TO:**
Research Department
Ocwen Loan Servicing, LLC
P.O. Box 24736
West Palm Beach, FL 33416-4736

## PAYMENT REMITTANCE INFORMATION
### (Always include Loan # ▬▬▬▬ with your payment)

**Money Gram**
Receive Code: 2355
Payable To: Ocwen Loan Servicing, LLC
City: Orlando
St: FL
Agent Locater: 800-926-9400
Loan # ▬▬▬▬

**Western Union**
BY WUQC
Code City: Ocwen
State: FL
Reference: Loan # ▬▬▬▬

**Overnight Address**
Ocwen Loan Servicing, LLC
2012 Corporate Lane, Suite 108
Naperville, IL 60563-0726
Attention: Cashiering Department

**VIA Regular Mail**
Ocwen Loan Servicing, LLC
P.O. Box 6440
Carol Stream, IL 60197-6440

---

NMLS # 1852                                                                                     DEMANDTXM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



# EXHIBIT A-6

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower

Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): ALT A | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | 0090158544 |

| Amount | Interest Rate | No. of Months | Amortization Type: |
|---|---|---|---|
| $ 168,000.00 | 8.250 % | 360 | ☒ Fixed Rate  ☐ Other (explain): ☐ GPM  ☐ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | No. of Units |
|---|---|
| 2123 Old Ox Road, Spring, TX 77386 | 1 |

Legal Description of Subject Property (attach description if necessary) Lot Sixty-four (64), in Block Three (3) of Spring | Year Built

Forest, Section One (1), an addition in Montgomery County, Texas, according to the map or plat thereof | 1985

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: ☐ Primary Residence  ☐ Secondary Residence  ☒ Investment |
|---|---|---|
| | ☒ Refinance  ☐ Construction-Permanent | |

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| 2000 | $ 0.00 | $ 0.00 | Cash-Out/Debt Consolid | Cost: $ 0.00 |

| Title will be held in what Name(s) David L. Glassel, An Unmarried Man | Manner in which Title will be held Individual | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr. or Sr. if applicable) | David L. Glassel | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| | (281) 298-6410 | 02/14/1945 | 12 | | | | |

| ☐ Married  ☒ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no. 0 ages | ☐ Married  ☐ Unmarried  ☐ Separated | Dependents no. ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 28 No. Yrs. | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|
| 2119 OLD OX   Spring, TX 77386 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer ☐ Self Employed | CEDARCINE IND. 4403 N. FRAZIER Conroe, TX 77303 | Name & Address of Employer ☐ Self Employed |

| Yrs. on this job | 10.17 | Yrs. on this job |
|---|---|---|
| Yrs. employed in this line of work/profession | 10 | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business V.P. MARKETING | Business Phone (incl. area code) (281) 367-5075 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP-21N (0507).02
Page 1 of 4
VMP Mortgage Solutions, Inc.

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 16,800.00 | | $ 16,800.00 | Rent | $ 0.00 | |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 1,136.00 | $ 1,262.13 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 0.00 | 209.97 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 225.00 | 114.33 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 671.00 | 615.47 |
| Net Rental Income | 189.23 | | 189.23 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 16,989.23 | $ 0.00 | $ 16,989.23 | Total | $ 2,032.00 | $ 2,201.90 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income**   Notice:   Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.                                                Completed [ ] Jointly [x] Not Jointly

| ASSETS<br>Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| **List checking and savings accounts below** | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | *** SEE ADDENDUM *** | | |
| WOODFOREST NATIONAL BANK | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 14,959.26 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | | | |
| | | Acct. no. | | |
| Life insurance net cash value | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ 0.00 | | | | |
| **Subtotal Liquid Assets** | $ 14,959.26 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 440,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $ 4,577.00 | |
| **Total Assets a.** | $ 454,959.26 | Net Worth (a minus b) $ 122,300.26 | **Total Liabilities b.** | $ 332,659.00 |

## VII. ASSETS AND LIABILITIES (cont'd)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 2123 OLD OX SPRING, TX, 77386 | R | SFR | $ 225000 | $ 149487 | $ 2000 | $ 1037 | $ 759 | $ 0 |
| 2119 OLD OX Spring, TX, 77386 | H | SFR | 215000 | 149905 | 0 | 1136 | 896 | 0 |
| | | Totals | $ 440000 | $ 299392 | $ 2000 | $ 2173 | $ 1655 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VIII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 0.00 |
| b. Alterations, improvements, repairs | 0.00 |
| c. Land (if acquired separately) | 0.00 |
| d. Refinance (incl. debts to be paid off) | 149,487.00 |
| e. Estimated prepaid items | 4,000.00 |
| f. Estimated closing costs | 5,000.00 |
| g. PMI, MIP, Funding Fee | 0.00 |
| h. Discount (if Borrower will pay) | 0.00 |
| i. Total costs (add items a through h) | 158,487.00 |
| j. Subordinate financing | 21,000.00 |
| k. Borrower's closing costs paid by Seller | -1,470.00 |
| l. Other Credits (explain) | |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 168,000.00 |
| n. PMI, MIP, Funding Fee financed | 0.00 |
| o. Loan amount (add m & n) | 168,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -29,043.00 |

## IX. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | x | | |
| b. Have you been declared bankrupt within the past 7 years? | | x | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | x | | |
| d. Are you a party to a lawsuit? | | x | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such items as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | x | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | x | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | x | | |
| h. Is any part of the down payment borrowed? | | x | | |
| i. Are you a co-maker or endorser on a note? | | x | | |
| j. Are you a U.S. citizen? | x | | | |
| k. Are you a permanent resident alien? | | x | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | x | | | |
| m. Have you had an ownership interest in a property in the last three years? | | x | | |
| (1) What type of property did you own - - principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| (2) How did you hold title to the home – solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## X. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 8-22-06 | X | |

## XI. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | | CO-BORROWER | | |
|---|---|---|---|---|---|
| Ethnicity: | ☐ I do not wish to furnish this information. | | Ethnicity: | ☐ I do not wish to furnish this information. | |
| | ☐ Hispanic or Latino | ☒ Not Hispanic or Latino | | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native | ☐ Black or African American | Race: | ☐ American Indian or Alaska Native | ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | ☐ Asian | | ☐ Native Hawaiian or Other Pacific Islander | ☐ Asian |
| | | ☒ White | | | ☐ White |
| Sex: | ☐ Female | ☒ Male | Sex: | ☐ Female | ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| ☐ Face-to-face interview | | ALL APPROVED FUNDING |
| ☐ Mail | Interviewer's Signature                    Date | 6401 BINGLE ROAD STE 204 |
| ☒ Telephone | 06/30/2006 | Houston, TX 77092 |
| ☐ Internet | Interviewer's Phone Number (incl. area code) | |
| | (281) 966-1513 | |

| CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION | |
|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | **Borrower:** Glassel, David L. |
| | **Co-Borrower:** |

| | |
|---|---|
| **Agency Case Number:** | |
| **Lender Case Number:** | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | 8-22-06 | X | |

0090158544
Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP-21N (0507).02

Page 4 of 4

Addendum for Loan # : ▮▮▮▮▮ - Glassel, David L.

### --- LIABILITIES ----

| | |
|---|---|
| Creditor | :MBNA AMERICA |
| Address | : |
| | |
| C/S/Z | : |
| Acct. Type | :Revolving |
| In Name Of | :DAVID  GLASSEL |

Acct. # : ▮▮▮▮
Balance : $19,067.00
Payment : $701.00
Rem. Term : 28

| | |
|---|---|
| Creditor | :FRD MOTOR CR |
| Address | : |
| | |
| C/S/Z | : |
| Acct. Type | :Installment |
| In Name Of | :DAVID  GLASSEL |

Acct. # : ▮▮▮▮
Balance : $40,017.00
Payment : $841.00
Rem. Term : 48

| | |
|---|---|
| Creditor | :ROYALAOKBK |
| Address | : |
| | |
| C/S/Z | : |
| Acct. Type | :Installment |
| In Name Of | :DAVID  GLASSEL |

Acct. # : ▮▮▮▮
Balance : $3,867.00
Payment : [$610.00]
Rem. Term : 7

| | |
|---|---|
| Creditor | :AEGIS MORTGAGE CORP |
| Address | :2123 OLD OX |
| | |
| C/S/Z | : |
| Acct. Type | :Mortgage |
| In Name Of | :DAVID  GLASSEL |

Acct. # : ▮▮▮▮
Balance : *$149,487.00
Payment : [$1,037.00]
Rem. Term : 145

| | |
|---|---|
| Creditor | :AEGIS MORTGAGE CORP |
| Address | :2119 OLD OX |
| | |
| C/S/Z | : |
| Acct. Type | :Mortgage |
| In Name Of | :DAVID  GLASSEL |

Acct. # : ▮▮▮▮
Balance : $149,905.00
Payment : [$1,136.00]
Rem. Term : 132

| | |
|---|---|
| Creditor | :WASH MUTUAL/PROVIDIAN |
| Address | : |
| | |
| C/S/Z | : |
| Acct. Type | :Revolving |
| In Name Of | :DAVID  GLASSEL |

Acct. # : ▮▮▮▮
Balance : $4,685.00
Payment : $188.00
Rem. Term : 25

| | |
|---|---|
| Creditor | :WASH MUTUAL/PROVIDIAN |
| Address | : |
| | |
| C/S/Z | : |
| Acct. Type | :Revolving |
| In Name Of | :DAVID  GLASSEL |

Acct. # : ▮▮▮▮
Balance : $3,139.00
Payment : $126.00
Rem. Term : 25

| | |
|---|---|
| Creditor | :WELLS FARGO BANK |
| Address | : |
| | |
| C/S/Z | : |
| Acct. Type | :Revolving |
| In Name Of | :DAVID  GLASSEL |

Acct. # : ▮▮▮▮
Balance : $10,670.00
Payment : $278.00
Rem. Term : 39

| | |
|---|---|
| Creditor | :BANK OF AMERICA |
| Address | : |
| | |
| C/S/Z | : |
| Acct. Type | :Revolving |
| In Name Of | :DAVID  GLASSEL |

Acct. # : ▮▮▮▮
Balance : $7,133.00
Payment : $132.00
Rem. Term : 55

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date: | Co-Borrower's Signature: | Date: |
|---|---|---|---|
| X | 8-22-06 | X | |

Addendum for Loan # :▮▮▮▮▮ - Glassel, David L.                    :

### --- LIABILITIES ---

| | | | |
|---|---|---|---|
| Creditor | :CAPITAL 1 BK | Acct. # | :▮▮▮▮▮ |
| Address | : | Balance | : $230.00 |
| | | Payment | : $15.00 |
| C/S/Z | : | Rem. Term | : 16 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :CHASE | Acct. # | :▮▮▮▮▮ |
| Address | : | Balance | : $9,895.00 |
| | | Payment | : $262.00 |
| C/S/Z | : | Rem. Term | : 38 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :CHASE | Acct. # | :▮▮▮▮▮ |
| Address | : | Balance | : $6,545.00 |
| | | Payment | : $230.00 |
| C/S/Z | : | Rem. Term | : 29 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :CAPITAL 1 BK | Acct. # | :▮▮▮▮▮ |
| Address | : | Balance | : $1,451.00 |
| | | Payment | : $43.00 |
| C/S/Z | : | Rem. Term | : 34 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :CHASE | Acct. # | :▮▮▮▮▮ |
| Address | : | Balance | : $9,076.00 |
| | | Payment | : $240.00 |
| C/S/Z | : | Rem. Term | : 38 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :CAPITAL 1 BK | Acct. # | :▮▮▮▮▮ |
| Address | : | Balance | : $1,490.00 |
| | | Payment | : $44.00 |
| C/S/Z | : | Rem. Term | : 34 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :HSBC NV | Acct. # | :▮▮▮▮▮ |
| Address | : | Balance | : $1,309.00 |
| | | Payment | : $37.00 |
| C/S/Z | : | Rem. Term | : 36 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :UNVL/CITI | Acct. # | :▮▮▮▮▮ |
| Address | : | Balance | : $13,663.00 |
| | | Payment | : $552.00 |
| C/S/Z | : | Rem. Term | : 25 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :DISCOVER FIN SVCS LLC | Acct. # | :▮▮▮▮▮ |
| Address | : | Balance | : $4,604.00 |
| | | Payment | : $110.00 |
| C/S/Z | : | Rem. Term | : 42 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date: | Co-Borrower's Signature: | Date: |
|---|---|---|---|
| X | 8-22-06 | X | |

Addendum for Loan # : ████████ Glassel, David L.

### --- LIABILITIES ---

| | | | |
|---|---|---|---|
| Creditor | :THD/CBUSA | Acct. # | :████████ |
| Address | : | Balance | : $1,704.00 |
| | | Payment | : $45.00 |
| C/S/Z | : | Rem. Term | : 38 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :GECCCC/PAY PAL | Acct. # | :████████ |
| Address | : | Balance | : $86.00 |
| | | Payment | : [$10.00] |
| C/S/Z | : | Rem. Term | : 9 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :GEMB/LOWES | Acct. # | :████████ |
| Address | : | Balance | : $1,639.00 |
| | | Payment | : $46.00 |
| C/S/Z | : | Rem. Term | : 36 |
| Acct. Type | :Revolving | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :AMEX | Acct. # | :████████ |
| Address | : | Balance | : $3,438.00 |
| | | Payment | : [$3,438.00] |
| C/S/Z | : | Rem. Term | : 1 |
| Acct. Type | :Open | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :CITIFINANCIAL | Acct. # | :████████ |
| Address | : | Balance | : $9,181.00 |
| | | Payment | : $322.00 |
| C/S/Z | : | Rem. Term | : 29 |
| Acct. Type | :Installment | | |
| In Name Of | :DAVID GLASSEL | | |

| | | | |
|---|---|---|---|
| Creditor | :WOODFOREST NATIONAL BANK | Acct. # | :████████ |
| Address | : | Balance | : $29,865.00 |
| | | Payment | : $365.00 |
| C/S/Z | : | Rem. Term | : 82 |
| Acct. Type | :Installment | | |
| In Name Of | : | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date: | Co-Borrower's Signature: | Date: |
|---|---|---|---|
| X | 8-22-06 | X | |

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States District Court
Southern District of Texas

**ENTERED**

June 16, 2017

David J. Bradley, Clerk

| | | |
|---|---|---|
| David L Glassel | § | |
| | § | |
| *versus* | § | Civil Action 4:17−cv−00553 |
| | § | |
| Ocwen Loan Servicing, LLC | § | |

**SCHEDULING ORDER**

1. August 11, 2017

   **AMENDMENTS TO PLEADINGS AND ADDITION OF NEW PARTIES**
   Party requesting joinder will furnish a copy of this scheduling order to new parties.

   **EXPERTS**

2a. November 17, 2017

   Plaintiff, or party with the burden of proof, will designate expert witnesses in writing, listing the qualifications of each expert, the opinions the expert will present, and the bases for the opinions as required under Federal Rule of Civil Procedure 26(A)(2).

2b. December 29, 2017

   Defendant, or party without the burden of proof, will designate expert witnesses in writing, listing the qualifications of each expert, the opinions the expert will present, and the bases for the opinions as required under Federal Rule of Civil Procedure 26(A)(2).

3. February 2, 2018

   **DISCOVERY**
   Counsel may, by agreement continue discovery beyond the deadline. No continuance will be granted because of information acquired in post−deadline discovery.

4. April 2, 2018

   **MOTIONS DEADLINE**
   Including any motion challenging an expert witness (only motions in limine on issues other than experts may be filed after this date). The motion deadline may not be changed by agreement.

**JOINT PRETRIAL ORDER**

5a.  May 28, 2018          THE DEFENDANT shall supply the Plaintiff with a
                           final version of its pretrial order by this date. (Where
                           available, Defendant should supply Plaintiff with an
                           electronic copy.)

5b.  June 4, 2018          THE PLAINTIFF is responsible for filing the pretrial
                           order on this date. All Motions in Limine must also be
                           filed by this date.

6.   June 8, 2018          **DOCKET CALL** is set at 1:30 PM in Courtroom 8C.

7.   June 11, 2018         **TRIAL**
                           Case is subject to being called to trial on short notice
                           during the two week period beginning on this date.


The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on June 16, 2017 at Houston, Texas.


Alfred H. Bennett
United States District Judge

United States District Court
Southern District of Texas
**ENTERED**
February 09, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID L GLASSEL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-553 |
| | § | |
| OCWEN LOAN SERVICING, LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendant Ocwen Loan Servicing, LLC's Motion to Dismiss (Doc. #24),

Plaintiff's Response (Doc. #30), and Defendant's Reply (Doc. #36). Having considered the

arguments and the applicable law, the Court denies Defendant's Motion to Dismiss (Doc. #24).

Defendant asserts three arguments for potential dismissal within its Motion: (1) contractual

estoppel; (2) judicial estoppel; and (3) that the statute of limitation argument is implausibly pled. In

regard to the first two arguments, a determination on these assertions is premature. Though

Defendant may very well be right in their assertions, none of these arguments are clear from the

face of Plaintiff's complaint, and would require factual and legal determinations by this Court. As

such, these arguments are better suited for summary judgment and a dismissal at this time is

inappropriate. As to the last argument, Plaintiff's amended complaint states a plausible declaratory

judgment based on the statute of limitations. Accordingly, dismissal based on this argument is

inappropriate.

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. #24) is DENIED.

It is so ORDERED.

FEB 0 9 2018
_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge

United States District Court
Southern District of Texas

**ENTERED**

February 09, 2018

David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID L GLASSEL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-553 |
| | § | |
| OCWEN LOAN SERVICING, LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

### ORDER

Before the Court is Defendant Ocwen Loan Servicing, LLC's Motion to Dismiss (Doc. #24), Plaintiff's Response (Doc. #30), and Defendant's Reply (Doc. #36). Having considered the arguments and the applicable law, the Court denies Defendant's Motion to Dismiss (Doc. #24).

Defendant asserts three arguments for potential dismissal within its Motion: (1) contractual estoppel; (2) judicial estoppel; and (3) that the statute of limitation argument is implausibly pled. In regard to the first two arguments, a determination on these assertions is premature. Though Defendant may very well be right in their assertions, none of these arguments are clear from the face of Plaintiff's complaint, and would require factual and legal determinations by this Court. As such, these arguments are better suited for summary judgment and a dismissal at this time is inappropriate. As to the last argument, Plaintiff's amended complaint states a plausible declaratory judgment based on the statute of limitations. Accordingly, dismissal based on this argument is inappropriate.

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. #24) is DENIED.

It is so ORDERED.

FEB 0 9 2018

_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DAVID L. GLASSEL** | : | |
| **Plaintiff** | : | |
| | : | |
| **VS.** | : | **Civil Action No. 4:17-CV-553** |
| | : | |
| **OCWEN LOAN SERVICING, LLC** | : | |
| **And its Trustee, DEUTSCHE BANK** | : | |
| **NATIONAL TRUST, Defendants.** | : | |

### PLAINTIFF'S AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, DAVID L. GLASSEL files his Amended Complaint against Defendant, OCWEN LOAN SERVICING, LLC and its trustee, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, IN TRUST FOR REGISTERED HOLDERS OF LONG BEACH MORTGAGE LOAN TRUST 2006-7, ASSET-BACKED CERTIFICATES, SERIES 2006-7, and for cause of action shows as follows:

### I.

### PARTIES

1.      Plaintiff, DAVID GLASSEL, is an individual residing in Spring, Montgomery County, Texas.

2.      Defendant, OCWEN LOAN SERVICING, LLC, ("Ocwen") is a business who has already made an appearance in this cause and filed an answer.  Defendant may be served through its attorneys of record pursuant to the Federal Rules of Civil Procedure.

3.      DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, IN TRUST FOR REGISTERED HOLDERS OF LONG BEACH MORTGAGE LOAN TRUST 2006-7, ASSET-BACKED CERTIFICATES, SERIES 2006-7 ("Deutsche Bank") is a business

who has made an appearance in this cause and seeks to intervene. Deutsche may be served through its attorneys of record pursuant to the Federal Rules of Civil Procedure.

II.

**BACKGROUND/FACTS**

4.      In the summer of 1975 David Glassel and his now deceased wife purchased two contiguous lots in the Spring Forest subdivision of Montgomery County, Texas with the intent to make the property their home. The legal description of the property lots is as follows:

> Sixty Four (64) and Sixty Five (65) in Block Three (3) of Spring Forest Section One, according to the Map or Plat thereof recorded in Volume 7, page 379 of the Map Records of Montgomery County, Texas ("the Property").

5.      In August 1975, Plaintiff took out a mortgage to enlarge and remodel the existing house on the Property and add a large garage adjacent to the home. The construction was without regard to the boundaries of the lots and the buildings overlapped making the Property one parcel.

6.      The mortgage was a single loan obtained from Bright Banc Savings Association. Subsequently, Bright Banc was placed in government conservatorship and went through numerous acquisitions and mergers during the 1990s.

7.      In August 2004, Plaintiff refinanced his mortgage with Aegis Funding Corporation ("Aegis"). When Aegis was on the brink of bankruptcy[1] the loan was reassigned to the Mortgage Electronic Registration Systems, Inc. ("MERS").

8.      MERS split the loan into two separate mortgages in 2006 assigning one to Long Beach Mortgage Company ("Long Beach") and the other Greenpoint Mortgage Funding, Inc. ("Greenpoint"). The loan documents used in the Long Beach mortgage are Texas Home Equity

---

[1] Aegis Funding Corporation filed for protection under chapter 11 on August 13, 2007, in the Southern District of Texas Bankruptcy Court, Houston Division.

Note forms and identify the property be secured only as 2119 Old Ox Road, Spring, Texas. This is the address used by the Plaintiff for his entire homestead, house and garage. The Note was executed on June 9, 2006.

9.      The second loan and third loans that were secured by Plaintiff's homestead were documented with standard note and deed of trust forms for non-homestead real estate loans. Debtor signed the documents August 22, 2006.

10.      On this date Plaintiff had refinanced his homestead with three loans totaling $395,000.00. The loan documents for these loan transactions were prepared by the lenders' attorneys. Plaintiff was not afforded an opportunity to review the documents before execution nor was he given an opportunity to have an independent attorney review them prior to closing. Plaintiff was never apprised of the purpose of separate loans and did not discover the conspiracy behind the conduct of Deutsche Bank or its servicing assignees until receiving Ocwen's correspondence informing him that the loans were not considered to be home equity loans.

11.      In July 2012 Plaintiff was removed from the management of his company and his sole source of income, by state court's temporary injunctive order. Plaintiff was unable to make his monthly mortgage payments and made no payments on the loans since that date.

## III.

## CAUSES OF ACTION

**VIOLATIONS OF TEXAS CONSTITUTION AND PROPERTY CODE**

12.      Paragraphs 4 through 11 are incorporated by reference for all purposes as if fully recited here. Article 16, Section 50(a)(6) et seq. of the Texas Constitution sets forth the requirements for an extension of credit secured by a line on the borrower's homestead. Section 6(D) mandates that a lien securing the loan on a homestead cannot be foreclosed except on a

court order. The Defendants have ignored the requirements of 1) Section 50(a)(6)(E) that provides limitation on broker's fees and costs; 2) Section(a)(6)(C) regarding personal liability against the owner; 3) Section(a)(6)(H) regarding additional real and personal property taken; 4) Section(a)(6)(K); and 5) Section(a)(6)(D), (F), (J), (L), and (Q)(i), (ii), (iv), (v) and (vi) when they required Plaintiff to enter into three separate loan transactions on his homestead refinancing.

13.     In the alternative without waiving the foregoing, the lien of Greenpoint is void and of no force because of the violation of Section 50 of the Texas Constitution and Section 42.001(b)(1) of the Texas Property Code prohibiting the enforcement of liens against homestead except for limited purposes.

**LIMITATIONS**

14.     Paragraphs 4 through 13 are incorporated by reference for all purposes as if fully recited here. The Texas Civil Practice and Remedies Code, Section 16.035(b) provides for a four-year statute of limitation to enforce a lien otherwise enforcement of the lien is void after four years. Defendants and Intervenors have not obtained such an order within four years of the date of the last payment of the Plaintiff.

15.     Pursuant to Texas Rule Civil Procedure 736 a Texas Home Equity Note cannot be foreclosed upon without an application to the state district court for an expedited order permitting foreclosure. Neither Defendant nor their assignors or assignees have obtained such an order permitting foreclosure within four years from the date of the last payment on the mortgages and are therefore time barred.

16.     Without waiving the foregoing, all liens claimed by Ocwen and Deutsche Bank are time barred by four year statute of limitations pursuant to Texas Civil Practice and Remedies Code, Section 16.035(b).

17.    Ocwen became the loan servicer for Bank of America by assignment.  It was also given the assignment by Deutsche Bank to foreclose on the Greenpoint note and deed of trust. Plaintiff gave Ocwen the required 60-day notice of constitutional violations in November 2016. Ocwen did nothing to cure the constitutional violation within the constitutional time limitations and it has forfeited the entire principal and interest of the extension of credit claimed by its principal.

**DECLARATORY JUDGMENT**

18.    Paragraphs 4 through 17 are incorporated by reference for all purposes as if fully recited here.  Plaintiff seeks declaratory judgments regarding the constitutional violations by Defendants and the time barred claims of liens on Plaintiff's homestead.  But without limitation, Plaintiff seeks declaratory judgment that:

(a)    liens allegedly securing loans on Plaintiff's homestead cannot be foreclosed or otherwise enforced;

Or, in the alternative, that

(b)    all alleged liens claimed by Defendants, their predecessors in interest or assignees against the Property are void and of no force;

(c)    the entire principal and interest of an extension of credit claimed due from Plaintiff by Defendants, their predecessors in interest or assignees, have been or is forfeited; and

(d)    all claims by Defendants, their predecessors in interest or assignees are time barred by four-year statute of limitations.

**ACCOUNTING**

19.     Additionally, and in the alternative, Plaintiff seeks an accounting from the

Defendants regarding the various loans that are the subject of this suit.  Plaintiff has contractual

relationships with Defendants which will support Plaintiff's request for an accounting, and/or the

facts and accounts presented are so complex adequate relief may not be obtained at law, making

an equitable accounting appropriate.

IV.

<u>**JURY TRIAL**</u>

20.     Plaintiff respectfully demands a jury trial.

V.

<u>**ATTORNEY FEES**</u>

21.     Plaintiff is entitled to recover reasonable and necessary attorneys' fees based on

applicable statutory or common law rights to attorneys' fees.

VI.

<u>**PRAYER**</u>

For these reasons, Plaintiff asks for judgment against Defendants for the following:

a.     Declaratory judgment as plead in Paragraph 18 (a) through (d) above;

b.     Forfeit of the entire principal and interest of the extensions of credit claimed by
       the Defendants;

c.     Disgorgement of all amounts already paid under the extensions of credit claimed
       by the Defendants;

d.     An accounting as sought by Plaintiff of the series of loans by and between
       Plaintiff and Defendants, their predecessors and assigns in interest;

e.      Reasonable and necessary attorney fees;

f.      Prejudgment and post-judgment interest;

g.      Costs of suit; and

h.      All other relief the court deems appropriate.

Respectfully submitted,

/s/ Larry A. Vick
LARRY A. VICK
Texas Bar No. 20563500
10497 Town & Country Way, Suite 700
Houston, Texas 77024
lv@larryvick.com
(713) 239-1062
(832) 202-2821 - Fax

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Plaintiff's Amended Complaint has been served upon the Defendant and Intervenor through their attorneys Mark D. Cronewett, Mackie Wolf Zientz & Mann, P.C., 14160 North Dallas Parkway, Suite 900, Dallas, Texas 75254 and Michael F. Hord, Jr. and Eric C. Mettenbrink, Hirsch & Westheimer, P.C. 1415 Louisiana, 36th Floor, Houston, TX 77002, by U. S. Mail and/or through the Court's ECF system on this 10th day of August, 2017.

/s/ Larry A. Vick
LARRY A. VICK



